1  DOUGLAS M. NEISTAT, ESQ. (State Bar No. 055961)
   dneistat@greenbass.com
2  GREENBERG & BASS LLP
   16000 Ventura Boulevard, Suite 1000
3  Encino, California 91436
   Tel: (818) 382-6200 • Fax: (818) 986-6534
4
   Attorneys for
5  JACKSON CORPORATION, Debtor and Debtor in Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11 | In re                           | Case No.: LA 09-10594-VZ
12 | JACKSON CORPORATION, a California | (Chapter 11)
   | corporation,                     |
13 |                                  | **DEBTOR'S NOTICE OF MOTION AND**
14 |          Debtor and Debtor in Possession. | **MOTION FOR ORDER AUTHORIZING ASSUMPTION OF UNEXPIRED LEASE OF NON-RESIDENTIAL REAL**
15 |                                  | **PROPERTY [11 U.S.C. §365(a) and (b)]; MEMORANDUM OF POINTS AND**
16 |                                  | **AUTHORITIES; DECLARATION OF RICHARD LASKI**
17
18 |                                  | Date:    September 8, 2009
   |                                  | Time:    11:00 a.m.
19 |                                  | Ctrm:    1368

20    TO ALL PARTIES IN INTEREST:

21        PLEASE TAKE NOTICE that a hearing will be held on September 8, 2009, at 11:00 a.m.

22 before the Honorable Vincent Zurzolo, United States Bankruptcy Judge, in Courtroom "1368" of the

23 above entitled Court located at 255 East Temple Street, Los Angeles, CA 90012 to consider the

24 Notice of Motion and Motion for Order Authorizing Assumption of Unexpired Lease of Non-

25 Residential Real Property (the "Motion").

26        PLEASE TAKE FURTHER NOTICE that the Motion is brought pursuant to 11 U.S.C.

27 section 365 and will be based upon this Notice of Motion and Motion, the Memorandum of Points

28 and Authorities and the Declaration of Richard Laski, all of the papers and records on file, all

                                    1

1  matters of which this Court may properly take judicial notice and such other evidentiary matters as

2  may be presented to the Court regarding the Motion.

3      PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-1(f),

4  any party who wishes to oppose the Motion shall, not later than fourteen (14) days from the date of

5  this notice, file with the Clerk of the Court and serve on the Debtor's, a brief but complete written

6  statement of all reasons in opposition to the Motion, an answering memorandum of points and

7  authorities in support thereof and copies of all documentary evidence upon which the responding

8  party intends to rely. Failure to file and serve a written opposition to the Motion in the manner set

9  forth above may be deemed to constitute consent to the relief requested in the Motion.

10      Failure to file and serve a written opposition to the Motion in the matter set forth above may

11  be deemed to constitute consent to the relief requested in the Motion.

12  DATED: August 7, 2009          GREENBERG & BASS LLP

13

14                       By: _Dougl M. Neist_____

15                       DOUGLAS M. NEISTAT
                     Attorneys for JACKSON CORPORATION,

16                       Debtor and Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

JACKSON CORPORATION, a California corporation, the Debtor and Debtor in Possession herein (the "Debtor") commenced this reorganization case by the filing of a Voluntary Chapter 11 Petition on January 12, 2009. Under 11 U.S.C. §§ 1107, 1108, the Debtor is acting as a Debtor in Possession and continues to manage and operate its business. The Debtor is a California corporation and a manufacturer of high quality door hardware for the aluminum and tempered glass door industry.

The Debtor is the lessee under an unexpired lease identified below (the "Lease"). In the exercise of its business judgment, the Debtor has determined that assumption of the Lease is in the best interest of the estate because, as more fully outlined in the Declaration of Richard Laski, maintaining the present facility location will assist in the Debtor's reorganization effort.

The Debtor is entitled to assume the Lease pursuant to the provisions of Bankruptcy Code section 365. The Debtor is unaware of any defaults to be cured and will promptly cure any defaults that are proven to exist.

### II.

### THE LEASE

The Debtor is the lessee of non-residential real property (the "Property") located at 3447, 3453, 3457, 3474 and 3482 Union Pacific Avenue, 3450 East 14th Street and 3475 East 15th Street, Los Angeles, California 90023. Thomas Industries, Inc, is the lessor ("Lessor") of the Property (the lease is now being serviced by Gardner Denver, Inc.). A copy of the Lease is attached hereto as Exhibit "A". The Debtor operates its manufacturing business commonly know as Jackson Corporation, on the Property.

The original Lease commenced on May 27, 1994 and the initial term of the Lease expired on May 31, 2000 with the most recent renewal term set to expire on May 31, 20010 Pursuant to the terms of the Lease, the Debtor now pays a monthly base rent of $4,000 (utilities and property taxes not included).



126873.1  300795.0002



1    The facility operated by the Debtor on the Property has been marginally profitable, since the

2    filing of the chapter 11 case, after reserving monthly debt service payments for the benefit of First

3    Federal pursuant to the terms of a Cash Collateral Stipulation and the rent provided for in the Lease

4    is reasonable. The Debtor intends to file a Disclosure Statement and Plan of Reorganization within

5    the time frame directed by the Court.

6    The Debtor believes it is current on all payments due under the Lease. The Debtor will

7    continue to make timely payments according to the Lease provisions.

8    As stated in the Declaration of Richard Laski the Lease terms are favorable and the Debtor

9    believes there is significant value in the Lease which will benefit the estate and aid in the overall

10   reorganization effort.

## III.

## THE DEBTOR IS ENTITLED TO ASSUME THE LEASE

13   Under Bankruptcy Code sections 365 and 1107, the Debtor is entitled to assume the Lease.

14   Bankruptcy Code subsection 365(a), in the pertinent part, provides:

15   [T]he trustee, subject to the court's approval, may assume . . . any . . . unexpired lease of the

16   debtor.

17   11 U.S.C. 365(a).

18   Under Bankruptcy Code section 1107(a), a Debtor In Possession is provided the rights,

19   powers, and duties of a Trustee. 11 U.S.C. §1107(a). Therefore, the Debtor, subject to Court

20   approval, may assume the Lease pursuant to Bankruptcy Code section 365.

21   Bankruptcy Code subsection 365(a) in conjunction with subsection 365(b)(1) provides a

22   Debtor In Possession with "the absolute right to assume an unexpired lease and to cure any defaults,

23   subject to the court's approval." In re Westview 74th Street Drug Corp., 59 B.R. 747, 754 (Bankr.

24   S.D.N.Y. 1986); see also In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789 (Bankr. N.D.

25   Ill. 1985); In re Lionel Corp., 29 B.R. 694, 696 (Bankr. S.D.N.Y. 1983). In the absence of a default,

26   a Debtor in Possession is entitled as a matter of course to the necessary Court approval to assume a

27   lease which appears to be in the best interest of the estate. See In Re Westview 74th Street Drug

28   Corp., supra, at 754; In re Bon Ton Restaurant & Pastry Shop, Inc., supra, at 793; In re Lionel Corp.,

126873.1 300795.0002

supra, at 696.

As stated above, the Debtor does not believe that it is in default under the Lease. Nevertheless, the Debtor intends to promptly cure any defaults which may be determined to exist. As discussed above and in the Declaration of Richard Laski, there is significant value in the Lease which will benefit the estate and aid in Debtor's overall reorganization effort.

In the exercise of its business judgment, the Debtor believes that the Lease should be assumed.

> Court approval of a debtor-in-possession's judgment that assumption
> of a lease is in the best interest of the debtor's business should not be
> withheld on the basis of a second-guessing of the debtor's judgment . .
> as long as assumption of a lease appears to enhance a debtor's estate,
> Court approval of a debtor-in-possession's decision to assume the lease
> should only be withheld if the debtor's judgment is clearly erroneous,
> too speculative, or contrary to the provisions of the Bankruptcy Code

In re Tech Hifi, Inc., 49 B.R. 876, 878 (Bankr. D. Mass. 1985), citing Allied Technology, Inc. v. R. B. Brunemann & Sons, Inc., 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982); see also In re Great Northwest Recreation Center, Inc., 74 B.R. 846, 853 (Bankr. D. Mont. 1987).

In this case, assumption of the Lease benefits the estate. The Debtor's business judgment that the Lease should be assumed is reasonable and should not be second-guessed. See Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985); In re Great Northwest Recreation Center, Inc., supra, at 853.

If it is determined that there is a default under the Lease, Bankruptcy Code subsection 365(b)(1) provides that a Debtor In Possession may not assume a lease unless, at the time of assumption, it cures or provides adequate assurance that it will promptly cure the default, it compensates, or provides adequate assurance that it will promptly compensate the lessor for any actual pecuniary loss resulting from default, and it provides adequate assurance of future performance under the Lease. 11 U.S.C. '365(b)(1); see In re Westview 74th Street Drug Corp., supra, at 754; In re Natco Industries, Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985); In re Bon Ton

5

126873.1  300795.0002

1    <u>Restaurant & Pastry Shop, Inc., supra</u>, at 793.

2        As stated above, the Debtor believes that there are no existing defaults under the Lease.  If

3    any default is proven to exist, however, the Debtor will promptly cure such a default and can provide

4    adequate assurance of future performance under the Lease.

5            The words 'adequate assurance of future performance' are not words

6            of art but were intended by Congress to be given a practical, pragmatic

7            construction.    <u>In re Sapolin Paints</u>, 5 B.R. 412, 420-21 (Bankr.

8            E.D.N.Y. 1980).  'As designed by Congress, the phrase does not mean

9            absolute insurance that the debtor will thrive and make a profit.' <u>In re</u>

10           <u>Natco Industries, Inc.</u>, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985),

11           citing <u>In re Alipat, Inc.</u>, 36 B.R. 274, 278 (Bankr. E.D. Mo. 1984).

12           The test is not one of guaranty but simply whether it appears that the

13           rent will be paid and other lease obligations met.  <u>Natco</u>, 54 B.R. at

14           440; <u>see In re Evelyn Byrnes, Inc.</u>, 32 B.R. 825, 829 (Bankr. S.D.N.Y.

15           1983); <u>In re U. L. Radio Corp.</u>, 19 B.R. 537, 542 (Bankr. S.D.N.Y.

16           1982).

17   <u>In re Westview 74th Street Drug Corp., supra</u>, at 754.

18       Assuming that no defaults exist as Debtor believes, this Court should approve Debtor's

19   request to assume the Lease without reference to Bankruptcy Code section 365(b)(1).

20           If no default exists, section 365(b)(1) is inapplicable in which case

21           assumption of an unexpired lease may be ordered without regard to the

22           cure, compensation and adequate assurance requirements.

23   <u>In re Bon Ton Restaurant & Pastry Shop, Inc., supra</u>, at 793, citing <u>In re Harry C. Partridge, Jr. &</u>

24   <u>Sons, Inc.</u>, 43 B.R. 669, 671 (Bankr. S.D.N.Y. 1984).

25       In any event, the Debtor has provided adequate assurance in this case.  The Debtor's timely

26   payment history under the Lease and the security deposit provide sufficient adequate assurance of

27   future performance.

28       The purpose underlying the authority provided by Bankruptcy Code section 365 to assume a

126873.1  300795.0002

1  lease is to assist in the Debtor's reorganization effort.  See In re Westview 74th Street Drug Corp.,

2  supra at 754; In re Bon Ton Restaurant & Pastry Shop, Inc., supra, at 792; H.R. Rep. No. 95-595,

3  95th Cong., 1st Sess. 348 (1977); reprinted in U.S. Code Cong. & Admin. News 5787, 5963, 6304

4  (1978; S.Rep. No. 95-989, 95th Cong., 2d Sess. 59 (1978) reprinted in U.S. Code Cong. & Admin.

5  News 5787, 5845 (1978).

6       Bankruptcy Code section 365 allows the Debtor to reject burdensome obligations while

7  permitting retention of those which have value to the estate.  See In re Goodloe, 61 B.R. 1016, 1018

8  (Bankr. M.D. Tenn. 1986), citing Chattanooga Memorial Park v. Still, 574 F.2d 349, 351 (6th Cir.)

9  cert. denied, 439 U.S. 929, 99 S.Ct. 316, 58 Lawyer's Edition 2d 322 (1978), and 2 Collier on

10  Bankruptcy, §§ 365.01-365.03 (15th ed. 1990).  In the exercise of its business judgment, the Debtor

11  has weighed the benefits and burdens under the Lease and has determined that the assumption of the

12  Lease is in the best interest of the estate.  Therefore, the Debtor should be authorized to assume the

13  Lease of the Property.

## IV.

## CONCLUSION

16       Based on the foregoing Motion and the attached Declaration of Richard Laski, and in order to

17  assist in the Debtor's reorganization efforts and benefit the estate and creditors, the Debtor

18  respectfully requests that this Court authorize the Debtor's assumption of the Lease of the Property.

19  The Debtor believes that there are no existing defaults under the Lease and, therefore, no cure is

20  required.

21  DATED: August 7, 2009                    GREENBERG & BASS LLP

22

23  By: _Douglas M. Neistat_

24      DOUGLAS M. NEISTAT
       Attorneys for JACKSON CORPORATION,
       Debtor and Debtor in Possession

25

26

27

28

126873.1  300795.0002

1

### DECLARATION OF RICHARD LASKI

2   I, RICHARD LASKI, declare as follows:

3       1.    I am the Interim CEO of Jackson Corporation ("Jackson"), the Debtor and Debtor in

4   Possession in Bankruptcy Case No. LA 09-bk-10594-VZ.  All of the following is within my own

5   personal knowledge and if called upon as a witness, I could and would testify competently thereto.

6       2.    I make this Declaration in support of the Debtor's Motion for Order Authorizing

7   Assumption of Unexpired Lease of Non-Residential Real Property ("Motion").  I have reviewed the

8   Motion and the statements contained therein are true and correct to the best of my knowledge,

9   information and belief.

10       3.    The Debtor is a California corporation and a manufacturer of high quality door

11   hardware for the aluminum and tempered glass door industry.

12       4.    The Debtor is the lessee of non-residential real property (the "Property") located at

13   3447, 3453, 3457, 3474 and 3482 Union Pacific Avenue, 3450 East 14th Street and 3475 East 15th

14   Street, Los Angeles, California 90023.  Thomas Industries, Inc, is the lessor ("Lessor") of the

15   Property (the lease is now being serviced by Gardner Denver, Inc.).  A copy of the Lease is attached

16   hereto as Exhibit "A".  The Debtor operates its manufacturing business commonly know as Jackson

17   Corporation, on the Property.

18       5.    The Debtor initiated this Chapter 11 case on January 12, 2009.  To the best of my

19   knowledge, information and belief and based upon the books and records of the Debtor, the Debtor

20   was current with respect to all of its obligations under the Lease to the Lessor as of the date of the

21   filing of its Chapter 11 case.

22       6.    I have reviewed the Lease for the Property which is attached as Exhibit "A" to the

23   Motion.  It is my belief that the rent and terms provided for in the Lease are fair and reasonable and

24   of benefit to this estate.

25       7.    It is my belief that assumption of the Lease is in the best interests of this estate

26   because it will enable the Debtor to continue to operate the facility on the Property.  If the Debtor

27   were required to terminate the operation of the facility on the Property, there would be substantial

28   ///

1   adverse consequences to this estate, including rental of replacement premises and all of the costs,

2   both direct and indirect, associated with the relocation of the Debtor's business.

3        I declare under penalty of perjury under the laws of the State of California that the foregoing

4   is true and correct, and that this declaration is executed on _____ .

5

6                                             TO BE PROVIDED
                                             _____
7                                             RICHARD LASKI

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT A

# STANDARD INDUSTRIAL LEASE - SPECIAL NET

1.   **Parties.** This Lease, dated May 27, 1994, is made by and between Builders Brass Works of Nevada, Inc., a Nevada corporation (herein called "Landlord"), and Jackson Corporation, a California corporation and Jebron Limited, a corporation organized and existing under the laws of England and Wales (herein collectively called "Tenant").

2.   **Premises.** Landlord hereby leases to Tenant and Tenant leases from Landlord for the term, at the rental, and upon all of the conditions set forth herein, that certain real property located at 3447, 3474, 3453, 3457 and 3482 Union Pacific Avenue, and 3450 East 14th Street and 3475 East 15th Street, Los Angeles, California 90023.  Said real property including the land, the buildings and all additional improvements thereon and all appurtenances thereunto appertaining, is herein called "the Premises".

3.   **Term.**

   3.1   **Term.** The term of this Lease shall be for six years, commencing on May 27, 1994 and ending on May 31, 2000 unless sooner terminated pursuant to any provision hereof.

   3.2   **Acceptance of Possession.** This Lease is entered into pursuant to that certain Asset Purchase Agreement dated as of May 27, 1994 (the "Asset Purchase Agreement") by and among Thomas Industries Inc., a Delaware corporation, Landlord and Tenant.  Tenant's occupancy of the Premises shall be deemed to constitute Tenant's acceptance thereof for all purposes hereunder.  Landlord shall have no obligation to make any repairs, alterations or improvements for the benefit of Tenant, it being understood and agreed that Landlord has made no representation or warranty to Tenant regarding the condition of the Premises or the suitability thereof for Tenant's intended uses except as may be specifically set forth herein or in the Asset Purchase Agreement.

   3.3   **Early Possession.** If Tenant occupies the Premises prior to said commencement date, such occupancy shall be subject to all provisions hereof, such occupancy shall not advance the termination date, and Tenant shall pay rent for such period at the initial monthly rates set forth below.

   3.4   **Early Termination.** Tenant shall have the right, at any time, on thirty days' prior written notice to Landlord, to terminate this Lease with or without cause.  Tenant shall continue to perform all of Tenant's obligations through the effective date of such termination and shall surrender possession of the Premises to Landlord on or before such effective date as provided in paragraph 7.2.  Rent shall be prorated through the date of termination.

4.   **Rent: Special Net Lease.**

   4.1   **Rent.** Tenant shall pay to Landlord as annual rent for the Premises during the term, the sum of TWENTY-TWO THOUSAND DOLLARS ($22,000).  Annual rent shall be payable in advance semi-annually on the first day of June and December for each year in

equal installments during the term hereof; provided, however, that Tenant's payment due June 1, 1994 shall be paid at the Closing Date as that term is defined in the Asset Purchase Agreement. Rent for any period during the term hereof which is for less than six (6) months shall be a pro rata portion of the semi-annual installment applicable to such lesser period. Rent shall be payable in lawful money of the United States to Landlord at the address stated herein or to such other persons or at such other places as Landlord may designate in writing.

4.2 **Special Net Lease.** This Lease is what is commonly called a "Net, Net, Net Lease", it being understood that the Landlord shall receive the rent set forth in paragraph 4.1 free and clear of any and all other impositions, taxes, liens, charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. In addition to the rent reserved by paragraph 4.1 Tenant shall, except as otherwise provided herein, pay to the parties respectively entitled hereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs, costs of repairs and replacements, and other charges, costs and expenses which arise or may be contemplated under any provisions of this Lease during the term hereof. All of such charges, costs and expenses shall constitute additional rent, and upon the failure of Tenant to pay any of such costs, charges or expenses, Landlord shall have the same rights and remedies as otherwise provided in this Lease for the failure of Tenant to pay rent. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Tenant, and that Tenant shall in no event be entitled to any abatement of or reduction in rent payable under this Lease, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties.

5.    **Security Deposit.** Intentionally Deleted.

6.    **Use.**

6.1    **Use.** The Premises shall be used and occupied only for manufacturing door control devices or any similar manufacturing use and for no other purpose except with the prior written approval of Landlord, which approval will not be unreasonably withheld.

6.2    **Compliance with Laws.**

(a)    **General Requirements.**

(1)    Tenant shall, at Tenant's sole risk, cost and expense, comply promptly and fully with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the occupancy or use by Tenant of the Premises, unless the noncompliance requiring correction is merely a continuation of noncompliance existing prior to the commencement date of this Lease. (By way of example, if the buildings on the Premises were not equipped with sprinkler systems prior to the commencement date, and such failure was in violation of an ordinance in force prior to the commencement date,

Tenant would have no obligation to cause the buildings to be equipped with sprinkler systems.)  Tenant shall not use nor permit the use of the Premises in any manner that will tend to create waste or a nuisance.

(2)     If immediately prior to the commencement of the term of this Lease, Landlord was not in compliance with any applicable statute, ordinance, rule, regulation, order, covenant or restriction of record regulating the Premises or the occupancy or use thereof (other than with respect to Environmental Laws which is covered in Section 6.11 of the Asset Purchase Agreement) and action is required with respect to such non-compliance by any federal, state, local or other governmental authority then promptly after notice from Tenant, Landlord shall perform such action as may be required by such governmental authority, at Landlord's sole cost and expense.  Tenant covenants and agrees that it shall not independently or voluntarily communicate with any federal, state, local or other governmental agency with respect to the non-compliance by Landlord referred to above except (i) to the extent required by law, or (ii) in response to unsolicited requests for communication from any such governmental agencies.

(b)     Obligations with Respect to Environmental Laws.

(1)     Tenant and the Premises will remain in compliance with all applicable laws, ordinances, and regulations (including consent decrees and administrative orders) relating to public health and safety and protection of the environment, including those statutes, laws, regulations, and ordinances identified hereinbelow, all as amended and modified from time to time (collectively, "Environmental Laws").  All governmental permits relating to the use or operation of the Premises required by applicable Environmental Laws are and will remain in effect, and Tenant will comply with them, unless the noncompliance requiring correction is merely a continuation of noncompliance existing prior to the commencement date of this Lease.

(2)     Tenant will not permit to occur any release, generation, manufacture, treatment, transportation, or disposal of "Hazardous Material," as that term is defined in this Lease, on, in, under, or from the Premises during its tenancy.  Tenant will promptly notify Landlord, in writing, if Tenant has or acquires notice or knowledge that any Hazardous material has been or is threatened to be released, discharged, disposed of or transported, on, in, under, or from the Premises during its tenancy; and if such Hazardous Material is found on the Premises, Tenant, at its own cost and expense, will immediately take such action as is necessary to detain the spread of and remove such Hazardous Material to the complete satisfaction of Landlord and the appropriate governmental authorities.  In order to assist in the process of determining whether any Hazardous Materials found in, on, under or from the Premises are there as a result of action or inaction during Tenant's tenancy hereunder or prior to such tenancy, Tenant will, to the extent commercially reasonable, (i) employ different materials in its manufacturing process from those previously used by Landlord in connection with Landlord's operation of its business prior to May 27, 1994 or

(ii) alter the physical appearance (by dye or otherwise) of materials used in the manufacturing process of its business.

(3)    Tenant will immediately notify Landlord and provide copies upon receipt of all written complaints, claims, citations, demands, inquiries, reports, or notices relating to the condition of the Premises or compliance with Environmental Laws. Tenant will promptly cure and have dismissed with prejudice any of those actions and proceedings, including without limitation, liens imposed in connection with Environmental Laws, to the satisfaction of Landlord, unless the action, proceeding or lien in question was instituted or imposed as a result of Hazardous Materials released on or from the Premises prior to the commencement date of this Lease or after the expiration of the term of this Lease by Landlord or any third party (except a party for whose actions Tenant is responsible under this Lease, such as an assignee or subtenant of Tenant holding over after the expiration of the term of this Lease).

(4)    Landlord will have the right at all reasonable times and from time to time to conduct environmental audits of the Premises at Landlord's sole cost and expense (unless such audit discloses a breach of Tenant's obligations under this paragraph 6.2 in which event Landlord shall be entitled to recover the costs of such audit pursuant to paragraph 6.2(d)(1), and Tenant will cooperate in the conduct of those audits.

(5)    For purposes of this Lease, "Hazardous Material" means:

(A)    "hazardous substances" or "toxic substances" as those terms are defined by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq., or the Hazardous Material Transportation Act, 49 U.S.C. § 1802, both as amended to this date and as amended after this date;

(B)    "hazardous wastes," as that term is defined by the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6902, et seq., as amended to this date and as amended after this date;

(C)    any pollutant, contaminant, or hazardous, dangerous, or toxic chemical, material, or substance within the meaning of any other applicable federal, state, or local law, regulation, ordinance, or requirement (including consent decrees and administrative orders) relating to or imposing liability or standards of conduct concerning any hazardous, toxic, or dangerous waste substance or material, all as amended to this date or as amended after this date;

(D)    crude oil or any fraction of it that is liquid at standard conditions of temperature and pressure (60 degrees Fahrenheit and 14.7 pounds per square inch absolute);

(E)    any radioactive material, including any source, special nuclear, or by-product material as defined as 42 U.S.C. § 2011, et seq., as amended to this date or as amended after this date;

(F)    asbestos in any form or condition; and

(G)    polychlorinated biphenyls (PCB's) or substances or compounds containing PCB's.

(c)    Limitations on Tenant's Obligations With Respect to Environmental Laws.  Notwithstanding anything to the contrary contained in paragraph 6.2(b), Tenant shall have no obligation to clean up, remove, remediate, or take any other action respecting any Hazardous Material released on or from the Premises prior to the commencement date of this Lease or after the expiration of the term of this Lease by Landlord or any third party (except a party for whose actions Tenant is responsible under this Lease, such as an assignee or subtenant of Tenant holding over after the expiration of the term of this Lease), nor shall Tenant be liable for the payment of any costs, expenses, damages, fines or penalties incurred by or imposed on Tenant as a result of any such activity.  Landlord's indemnity obligation under paragraph 6.2(d)(2) shall apply in the event Tenant is subjected to any suit, litigation, proceeding, claim, demand, damages, costs or expense (including, without limitation, reasonable attorney's fees) in violation of this paragraph 6.2(c).

(d)    Remedy and Indemnification.

(1)    Tenant.

(A)    If Tenant fails to comply with any of the covenants set forth in this paragraph 6, Landlord may cause the removal (or other cleanup acceptable to Landlord) of Hazardous Material from the Premises or the compliance with any applicable statute, ordinance, rule, regulation, order, covenant or restriction of record.  The costs of removing any Hazardous Material attributable to the tenancy and any other cleanup (including transportation and storage costs) will be additional rent under this Lease, whether or not a court or governmental authority has ordered the cleanup, and those costs will become due and payable on demand by Landlord.  Tenant will give Landlord, its agents, and employees access to the Premises to remove or otherwise clean up any Hazardous Material, and except as otherwise provided in this Lease, Landlord shall have no affirmative obligation to remove or otherwise so clean up any Hazardous Material.

(B)    Tenant agrees to indemnify, defend (with counsel reasonably acceptable to Landlord and at Tenant's sole cost and expense), and hold Landlord and Landlord's affiliates, shareholders, directors, officers, employees, and agents free and harmless from and against all suits, proceedings, damages (including consequential damages), disbursements, or expenses of any kind (including attorneys' and experts' fees and expenses and fees and expenses incurred in investigating, defending, or prosecuting any litigation,

claim, or proceeding) that may at any time be imposed upon, incurred by, or asserted or awarded against Landlord or any of them in connection with or arising from or out of:

(i)    any Hazardous Material on, in under, or affecting all or any portion of the Premises which is attributable to Tenant following the commencement date and before termination of this Lease;

(ii)    any misrepresentation, inaccuracy, or breach of any warranty, covenant, or agreement contained or referred to in this paragraph by Tenant;

(iii)    any violation or claim of violation by Tenant of any Environmental Laws; or

(iv)    the imposition of any lien for the recovery of any costs for environmental cleanup or other response costs relating to the release or threatened release of Hazardous Material attributable to Tenant or arising after the commencement date and before the termination of this Lease.

(2)    Landlord.

(A)    If Landlord fails to comply with any of the covenants set forth in this paragraph 6, Tenant may cause the removal (or other cleanup acceptable to Tenant) of Hazardous Material from the Premises or the compliance with any applicable statute, ordinance, rule, regulation, order, covenant or restriction of record. The costs of removing any Hazardous Material not attributable to the tenancy and any other cleanup (including transportation and storage costs) not related to the tenancy shall be recoverable by Tenant upon demand therefore from Landlord, provided a court or governmental authority has ordered the cleanup.

(B)    Landlord agrees to indemnify, defend (with counsel reasonably acceptable to Tenant and at Landlord's sole cost and expense), and hold Tenant and Tenant's affiliates, shareholders, directors, officers, employees, and agents free and harmless from and against all suits, proceedings, damages (including consequential damages), disbursements, or expenses of any kind (including attorneys' and experts' fees and expenses and fees and expenses incurred in investigating, defending, or prosecuting any litigation, claim, or proceeding)'that may at any time be imposed upon, incurred by, or asserted or awarded against Tenant or any of them in connection with or arising from or out of Landlord's failure to comply with any of Landlord's covenants under this paragraph 6 or to implement any of the obligations of Thomas Industries Inc. under Section 6.11(a) or (b) of the Asset Purchase Agreement.

(e)    Joint Obligations. To the extent that pursuant to paragraph 6.2, both Landlord and Tenant shall have obligations with respect to any particular matter, Landlord and Tenant shall use their best efforts to resolve such matters within a reasonable time after

notice of such occurrence to the other party and to the extent that any such matters are
unresolved after such reasonable time, which reasonable time shall not exceed sixty (60)
days, either party may initiate arbitration proceedings against the other party pursuant to the
arbitration provisions set forth in the Asset Purchase Agreement to resolve any such
unresolved joint obligations pursuant to paragraph 6.2.

7.    **Maintenance, Repairs, Replacements and Alterations.**

    7.1    **Tenant's Obligations.** Tenant shall keep in as good order, condition and
repair as on the commencement date of this Lease, the Premises and every part thereof,
structural and non structural (whether or not such portion of the Premises requiring repair, or
the means of repairing the same are reasonably or readily accessible to Tenant, and whether
or not the need for such repairs occurs as a result of Tenant's use, any prior use, the
elements or the age of such portion of the Premises) including, without limiting the
generality of the foregoing, all plumbing, heating, air conditioning, (Tenant shall procure and
maintain, at Tenant's expense, an air conditioning system maintenance contract) ventilating,
electrical, lighting facilities and equipment within the Premises fixtures, walls (interior or
exterior), foundations, ceilings, roofs (interior and exterior), floors, windows, doors, plate
glass and skylights located within the Premises, and all landscaping, driveways, parking lots,
fences and signs located on the Premises and sidewalks and parkways adjacent to the
Premises. It is understood and agreed that in meeting its obligations pursuant to this
paragraph 7.1, Tenant may repair (rather then replace) any component of the Premises unless
such component cannot be repaired, in which event replacement shall be required; provided,
however, that for the purposes of this paragraph 7.1, (i) the repair of any component of the
Premises or any building system costing more than $25,000 shall be deemed to constitute a
"capital item", and (ii) in the event the repair or replacement is of a capital item (a)
Landlord's consent as to the manner and nature of the repair or replacement shall be
required, (b) if the need for the capital item is not the result of damage caused by Tenant, or
Tenant's employees, agents, contractors or invitees, the cost of the capital item shall be
allocated between Landlord and Tenant by multiplying the number of months remaining in
the term (with any partial month treated as a whole month) by a fraction, the numerator of
which shall be the cost of the work, and the denominator of which shall be the estimated
useful life of the capital item (as repaired or replaced) expressed in months, calculated as of
the date of actual repair or replacement of such capital item. (Example A:  if a capital item
costs $50,000 and will have an estimated useful life of twenty years, and if the work is
performed twelve months prior to the expiration of the term, Tenant shall be responsible for
payment of $2,500 of the cost of said capital item (12 months x $50,000/240 months =
$2,500), and Landlord would be responsible for payment of $47,500 ($50,000 - $2,500 =
$47,500)). Inasmuch as an inordinate delay on the part of Tenant in performing capital item
repairs or replacements under such allocation scheme would unfairly penalize the Landlord,
Tenant's obligation of contribution for the prorated portion of the repair shall be deemed to
have accrued on the thirtieth day after either party becomes aware of the necessity of the
repair or replacement, regardless of whether a contractor has been engaged to perform the
work. Landlord shall have the option to perform any work reasonably likely to constitute a

capital item itself, and if Landlord so exercises such option all monies owed by Tenant pursuant to the foregoing allocation shall be paid to Landlord upon demand. In the event Tenant exercises its option to terminate the Lease pursuant to paragraph 3.4, and in the further event the effective date of such termination occurs after Landlord's or Tenant's identification of the need for the repair or replacement of a capital item, Tenant shall pay to Landlord Tenant's prorated portion, or Landlord shall reimburse Tenant for any portion of Tenant's prorated payment previously paid by Tenant which is allocable to the remaining original term of the Lease subsequent to the effective date of such early termination, as the case may be. (Example B: Under Example A, if Tenant were to terminate the Lease effective six months prior to the expiration of the term, Landlord would reimburse Tenant in the amount of $1,250.00 if Tenant has previously paid for the above-cited capital repair or replacement, or Landlord would credit Tenant $1,250.00 against Tenant's outstanding obligation if Tenant had not yet paid.)

7.2     **Surrender.** On the last day of the term hereof, or on any sooner termination, Tenant shall surrender the Premises to Landlord in the same condition as when received, ordinary wear and tear and loss by casualty or condemnation excepted, clean and free of debris. Tenant shall repair any damage to the Premises occasioned by the installation or removal of Tenant's trade fixtures, furnishings and equipment. Notwithstanding anything to the contrary otherwise stated in this Lease, Tenant shall leave the air lines, power panels, electrical distribution systems, lighting fixtures, space heaters, air conditioning, plumbing and fencing on the premises in good operating condition.

7.3     **Landlord's and Tenant's Rights.** If Tenant fails to perform Tenant's obligations under this paragraph after receiving thirty (30) days' written notice thereof from Landlord, Landlord may at its option (but shall not be required to) enter upon the Premises after ten (10) days prior written notice to Tenant (except in the case of an emergency, in which case no notice shall be required), perform such obligations on Tenant's behalf and put the same in good order, condition and repair, and the cost thereof together with interest thereon at the maximum rate then allowable by law shall become due and payable as additional rental to Landlord together with Tenant's next rental installment.

7.4     **Landlord's Obligations.** Except for the obligations of Landlord under paragraphs 6, 7.1, 9 (relating to destruction of the Premises) and 14 (relating to condemnation of the Premises), it is intended by the parties hereto that Landlord have no obligation, in any manner whatsoever, to repair and maintain the Premises nor the building located thereon nor the equipment therein, whether structural or non structural, all of which obligations are intended to be that of the Tenant under paragraphs 6 and 7.1 hereof. Tenant expressly waives the benefit of any statute now or hereinafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition and repair.

7.5    **Alterations and Additions.**

(a)    Tenant shall not, without Landlord's prior written consent, make any alterations, improvements, additions, or utility installations in, on or about the Premises costing more than Twenty-Five Thousand Dollars ($25,000) individually or in the aggregate during any twelve (12) month period. Landlord may require that Tenant remove any or all alterations, improvements, additions or utility installations made by Tenant at the expiration of the term, whether Landlord's consent thereto is required or not, and restore the Premises to their prior condition. Landlord may require Tenant to provide Landlord, at Tenant's sole cost and expense, a lien and completion bond in an amount equal to one and one-half times the estimated cost of such improvements, to insure Landlord against any liability for mechanic's and materialmen's liens and to insure completion of the work. Should Tenant make any alterations, improvements, additions or utility installations without prior approval of Landlord, where such approval is required Landlord may require that Tenant remove any or all of the same.

(b)    Any alterations, improvements, additions or utility installations in, or about the Premises that Tenant shall desire to make and which requires the consent of the Landlord shall be presented to Landlord in written form, with proposed detailed plans. If Landlord shall give its consent, the consent shall be deemed conditioned upon Tenant acquiring a permit to do so from appropriate governmental agencies, the furnishing of a copy thereof to Landlord prior to the commencement of the work and the compliance by Tenant of all conditions of said permit in a prompt and expeditious manner.

(c)    Tenant shall pay, when due, all claims for labor materials furnished or alleged to have been furnished to or for Tenant at or for use in the Premises, which claims are or may be secured by any mechanics' or materialmen's lien against the Premises or any interest therein. Tenant shall give Landlord not less than ten (10) days' notice prior to the commencement of any work in the Premises, and Landlord shall have the right to post notices of non-responsibility in or on the Premises as provided by law. If Tenant shall, in good faith, contest the validity of any such lien, claim or demand, then Tenant shall, at its sole expense defend itself and Landlord against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against the Landlord or the Premises, upon the condition that if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien claim or demand indemnifying Landlord against liability for the same and holding the Premises free from the effect of such lien or claim. In addition, Landlord may require Tenant to pay Landlord's attorneys fees and cost in participating in such action if Landlord shall decide it is to its best interest to do so.

(d)    Unless Landlord requires their removal, as set forth in paragraph 7.5(a), all alterations, improvements, additions and utility installations (whether or not such utility installations constitute trade fixtures of Tenant), which may be made on the Premises, shall become the property of Landlord and remain upon and be surrendered with the

Premises at the expiration of the term.  Notwithstanding the provisions of this paragraph 7.5(d), Tenant's machinery and equipment, other than that which is affixed to the Premises so that it cannot be removed without material damage to the Premises, shall remain the property of Tenant and may be removed by Tenant subject to the provisions of paragraph 7.2.

8.    Insurance Indemnity.

8.1    **Costs of Insurance.**  Tenant shall pay the cost of all insurance required to be maintained by Tenant hereunder and reimburse Landlord on demand for all insurance premiums paid by Landlord directly.  No policy maintained by Tenant shall be cancelable or subject to reduction of coverage or other modification except after thirty (30) days prior written notice to Landlord.  Tenant shall, at least thirty (30) days prior to the expiration of such policies, furnish Landlord with renewals or "binders" thereof or Landlord may order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand.  Tenant shall not do or permit to be done anything which shall invalidate the insurance policies maintained by Landlord or Tenant.  If Tenant does or permits to be done anything which shall increase the cost of the insurance policies referred to herein, then Tenant shall forthwith upon Landlord's demand reimburse Landlord for any additional premiums attributable to an act or omission or operation of Tenant causing such increase in the cost of insurance.

8.2    **Tenant's Liability Insurance.**  Tenant shall, at Tenant's expense obtain and keep in force during the term of this Lease a policy of Combined Single Limit, Bodily Injury and Property Damage insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto.  Such insurance shall be combined single limit policy in an amount not less than $1,000,000 per occurrence.  The policy shall insure performance by Tenant of the indemnity provisions of this paragraph 8.  The limits of said insurance shall not, however, limit the liability of Tenant hereunder.

8.3    **Tenant's Property Insurance Liability and Property Insurance.**  Tenant shall procure a policy of all-risk casualty and property insurance providing for replacement value coverage of not less than $2,000,000 (with a deductible not to exceed $5,000).  Neither Tenant nor Landlord shall have any obligation to carry earthquake insurance or to make any repairs or replacements which are caused by earthquake.  Notwithstanding paragraph 7.1, there is no obligation on the part of Tenant or Landlord to make repairs or replacements the need for which arises out of an earthquake or earthquake aftershock.

8.4    **Waiver of Subrogation.**  Tenant and Landlord each hereby release and relieve the other, and waive their entire right of recovery against the other for loss of damage arising out of or incident to the perils incurred against under paragraph 8.3, which perils occur in on or about the Premises due to the negligence of Landlord or Tenant or their agents, employees, contractors and or invitees.  Tenant and Landlord shall, upon obtaining

the policies of insurance required hereunder, give notice to the insurance carrier or carriers that the foregoing mutual waiver or subrogation is contained in this Lease.

8.5    **Indemnity.** Tenant shall indemnify and hold harmless Landlord from and against any and all claims arising from Tenant's use of the Premises, or from the conduct of Tenant's business or from any activity, work or things done, permitted or suffered by Tenant in or about the Premises and shall further indemnify and hold harmless Landlord from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any negligence of the Tenant, or any of Tenant's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon, and in case any action or proceeding be brought against Landlord by reason of any such claim.  Tenant upon notice from Landlord shall defend the same at Tenant's expense by counsel satisfactory to Landlord.  Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to persons, in, upon or about the Premises arising from Tenant's activities and Tenant hereby waives all claims in respect thereof against Landlord. Notwithstanding the foregoing, to the extent that Landlord or any of its agents, consultants, contractors, officers, directors, employees or representatives access the Premises for inspection or the performance of repairs, alterations or otherwise, Landlord shall indemnify and hold harmless Tenant from and against any and all claims arising from such activity, work or things done, permitted or suffered by Landlord in or about the Premises and shall further indemnify and hold harmless Tenant from and against any and all claims arising from any breach or detail in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any negligence of Landlord, or any of Landlord's agents, consultants, contractors, officers, directors, employees or representatives and from and against any and all costs, attorneys' fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon, and in case any action or proceeding be brought against Landlord by reason of any such claim.  Landlord upon notice shall defend the same at Landlord's expense by counsel satisfactory to Tenant. Landlord, as a material part of the consideration to Tenant, hereby assumes all risk of damage to property or injury to persons, in, upon or about the Premises arising from Landlord's and any of Landlord's agents', consultants', contractors', officers', directors', employees' or representatives' activities in or about the Premises and Landlord hereby waives all claims in respect thereof against Tenant.

8.6    **Exculpation of Landlord from Liability.**  Tenant hereby agrees that Landlord shall not be liable for injury to Tenant's business or any loss of income therefrom or for damage to the goods, wares, merchandise or other property of Tenant, Tenant's employees, invitees, customers, or any other person in or about the Premises, nor shall Landlord be liable for injury to the person of Tenant, Tenant's employees, agents or contractors, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air condition or lighting fixtures, or from any other cause, whether the

said damage or injury results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places and regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Tenant. Landlord shall not be liable for any damages arising from any act or neglect of any other tenant, if any, of the building in which the Premises are located.

**9.    Damage, Destruction, Rent Abatement.**

9.1    **Material Damage or Destruction.** Notwithstanding paragraph 7.1, in the event that some or all of the improvements constituting a part of the Premises or the Premises itself are damaged or destroyed, Landlord shall have the option, by delivery of thirty days' prior written notice to Tenant, to cancel the term of this Lease. If such option is not exercised by Landlord within sixty days after the date of the casualty, this Lease shall remain in full force and effect and Landlord shall commence to repair and restore the Premises within ninety days; all insurance proceeds received shall be either (i) held by Landlord and applied toward the cost of repairs, with any excess amounts paid to Landlord, or (ii) paid to Landlord if the Lease is cancelled by Landlord pursuant to this paragraph 9.1 or by Tenant pursuant to paragraph 3.4.

9.2    **Abatement of Rent.** Upon any partial or total destruction of the Premises or any part thereof not occurring as a result of the negligence or willful misconduct of Tenant, Tenant's employees, agents, contractors or invitees, rent shall abate in proportion to the extent the Premises are rendered untenantable by such partial or total destruction until such time as Tenant reoccupies the untenantable portion, if at all.

9.3    **Termination—Advance Payments.** Upon termination of this Lease pursuant to this paragraph 9, a prorata adjustment shall be made concerning advance rent.

9.4.    **Waiver.** Tenant waives the provisions of any statutes which relate to termination of leases when the thing leased is destroyed and agrees that such event shall be governed by the terms of this Lease.

**10.  Real Property Taxes.**

10.1    **Payment of Taxes.** Tenant shall pay the real property tax, as defined in paragraph 10.2, applicable to the Premises during the term of this Lease. All such payments shall be made at least ten (10) days prior to the delinquency date of such payment. Tenant shall promptly furnish Landlord with satisfactory evidence that such taxes have been paid. If any such taxes paid by Tenant shall cover any period of time prior to or after the expiration of the term hereof, Tenant's share of such taxes shall be equitably prorated to cover only the period of time within the tax fiscal year during which this Lease shall be in effect, and Landlord shall reimburse Tenant to the extent required. If Tenant shall fail to pay any such taxes, Landlord shall have the right to pay the same, in which case Tenant shall repay such

amount to Landlord with Tenant's next rent installment together with interest at the maximum rate then allowable by law.  In lieu of requiring Tenant to pay taxes directly prior to delinquency, Landlord may elect to pay such taxes and seek reimbursement from Tenant, in which event Tenant's reimbursement shall be due within ten (10) days after Landlord's demand therefor.  Tenant may from time to time, at Tenant's sole cost and expense, pursue downward reassessments of the property value of the Premises for property tax purposes when reasonably justified by economic circumstances. Landlord shall execute all documentation and take all further action reasonably necessary to assist Tenant in pursuing such reassessments, but at no cost or expense to Landlord.

    10.2    **Definition of "Real Property Tax".**  As used herein, the term "real property tax" shall include any form of real estate tax or assessment, general, special, ordinary or extraordinary, and any license fee, commercial rental tax, improvement bond or bonds, levy or tax (other than inheritance, personal income or estate taxes) imposed on the Premises by any authority having the direct or indirect power to tax, including any city, state or federal government, or any school, agricultural, sanitary, fire, street, drainage or to the improvement district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part, as against Landlord's right to rent or other income therefrom, and as against Landlord's business of leasing the Premises.  The term "real property tax" shall also include any tax, fee, levy, assessment or charge (i) in substitution of, partially or totally, any tax, fee, levy, assessment or charge hereinabove included within the definition of "real property tax," or (ii) the nature of which was hereinbefore included within the definition of "real property tax," or (iii) which is imposed for a service or right not charged prior to June 1, 1978, or, if previously charged, has been increased since June 1, 1978, or (iv) which is imposed as a result of a transfer, either partial or total, of Landlord's interest in the Premises or which is added to a tax or charge hereinbefore included within the definition of real property tax by reason of such transfer, or (v) which is imposed by reason of this transaction, any modifications or changes hereto, or any transfers hereof.

    10.3    **Personal Property Taxes.**

        (a)  Tenant shall pay prior to delinquency all taxes assessed against and levied upon trade fixtures, furnishings, equipment and all other personal property of Tenant contained in the Premises or elsewhere.  When possible, Tenant shall cause said trade fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Landlord.

        (b)  If any of Tenant's said personal property shall be assessed with Landlord's real property, Tenant shall pay Landlord the taxes attributable to Tenant within 10 days after receipt of a written statement setting forth the taxes applicable to Tenant's property.

**11.**    **Utilities.**  Tenant shall pay for all water, gas, heat, light, power, telephone and other utilities and services supplied to the Premises, together with any taxes thereon.  If any such

services are not separately metered to Tenant, Tenant shall pay a reasonable proportion to be determined by Landlord of all charges jointly metered with other premises.

**12.    Assignment and Subletting.**

    **12.1    Landlord's Consent Required.**  Tenant shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Tenant's interest in this Lease or in the Premises, without Landlord's prior written consent, which will not be unreasonably withheld.  In order to determine whether Landlord was or has not acted reasonably in withholding its consent, among the factors to be considered are the net worth and operating history of the prospective sublessee and sublessee's acceptance of the Premises without required changes, alterations or environmental tests or inspections.  Tenant's recourse in the event Landlord is found to have unreasonably withheld its consent shall be limited to an action for specific performance and Tenant shall not have any claim for damages in excess of actual expenses incurred in connection with the sublease.  If Tenant subleases such portion of the Premises as is currently occupied by the Jackson Exit Device Division of Landlord, any rent received by Tenant therefor in excess of rental amounts due and owing under this Lease shall be paid to Landlord.  Any attempted assignment, transfer, mortgage, encumbrance or subletting without such consent shall be void, and shall constitute a breach of this Lease.

    **12.2    Tenant Affiliate.**  Notwithstanding the provisions of paragraph 12.1 hereof, Tenant may assign or sublet the Premises, or any portion thereof, without Landlord's consent, to any corporation which controls, is controlled by or is under common control with Tenant, or to any corporation resulting from the merger or consolidation with Tenant, or to any person or entity which acquires all the assets of Tenant as a going concern of the business that is being conducted on the Premises, provided that said assignee assumes, in full, the obligations of Tenant under this concern of the business that is being conducted on the Premises, provided that said assignee assumes, in full, the obligations of Tenant under this Lease.  Any such assignment shall not, in anyway, affect or limit the liability of Tenant under the terms of this Lease even if after such assignment of Lease.

    **12.3    No Release of Tenant.**  Regardless of Landlord's consent, no subletting or assignment shall release Tenant of Tenant's obligation or alter the primary liability of Tenant to pay the rent and to perform all other obligations to be performed by Tenant hereunder.  The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision hereof.  Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting.  In the event of default by any assignee of Tenant or any successor of Tenant, in the performance of any of the terms hereof, Landlord may proceed directly against Tenant without the necessity of exhausting remedies against said assignee.

    **12.4    Attorney's Fees.**  In the event Tenant shall assign or sublet the Premises or request the consent of Landlord to any assignment or subletting or if Tenant shall request the

consent of Landlord for any act Tenant proposes to do then Tenant shall pay Landlord's reasonable attorneys fees incurred in connection therewith.

## 13. Defaults; Remedies.

13.1. **Defaults.** The occurrence of any one or more of the following events shall constitute a material default and breach of this Lease by Tenant:

(a)     The abandonment of the Premises by Tenant.

(b)     The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of seven (7) days after written notice thereof from Landlord to Tenant. In the event that Landlord serves Tenant with a Notice to Pay Rent or Quit pursuant to applicable Unlawful Detainer statutes such Notice to Pay Rent or Quit shall also constitute the notice required by this subparagraph.

(c)     The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Tenant, other than described in paragraph (b) above, where such failure shall continue for a period of 30 days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than 30 days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commenced such cure within said 30-day period and thereafter diligently prosecutes such cure to completion.     ·

(d)     (i) The making by Tenant of any general arrangement or assignment for the benefit of creditors; (ii) Tenant becomes a "debtor" as defined in 11 U.S.C. §101 or any successor statute thereto (unless, in the case of a petition filed against Tenant, the same is dismissed within 60 days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within 30 days; or (iv) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged within 30 days. Provided, however, in the event that any provision of this paragraph 13.1(d) is contrary to any applicable law, such provision shall be of no force or effect.

(e)     The discovery by Landlord that any financial statement given to Landlord by Tenant, any assignee of Tenant, any subtenant of Tenant, any successor in interest of Tenant or any guarantor of Tenant's obligation hereunder, and any of them was materially false.

13.2     **Remedies.** In the event of any such material default or breach by Tenant, Landlord may at any time thereafter, with or without notice or demand and without limiting Landlord in the exercise of any right or remedy which Landlord may have by reason of such default or breach.

(a)  Terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Tenant shall immediately surrender possession of the Premises to Landlord.  In such event Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to, the cost of recovering possession of the Premises; expenses of reletting, including necessary renovation and alteration of the Premises; reasonable attorney's fees, and any real estate commission actually paid; the worth at the time of award by the court having jurisdiction thereof of the amount by which the unpaid rent for the balance of the term after the time of such award exceeds the amount of such rental loss for the same period that Tenant proves could be reasonably avoided; that portion of the leasing commission paid by Landlord pursuant to paragraph 15 applicable to the unexpired term of this Lease.

(b)  Maintain Tenant's right to possession in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises.  In such event Landlord shall be entitled to enforce all of Landlord's rights and remedies under this Lease, including the right to recover the rent as it becomes due hereunder.

(c)  Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the state wherein the Premises are located.  Unpaid installments of rent and other unpaid monetary obligations of Tenant under the terms of this Lease shall bear interest from the date due at the maximum rate then allowable by law.

13.3    **Default by Landlord.**  Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord and to the holder of any first mortgage or deed of trust covering the Premises whose name and address shall have theretofore been furnished to Tenant in writing, specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required of performance then Landlord shall not be in default if Landlord commences performance within such 30-day period and thereafter diligently prosecutes the same to completion.

13.4    **Late Charges.**  Tenant hereby acknowledges that late payment by Tenant to Landlord of rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult and impractical to fix.  Such costs include, without limitation, processing and accounting charges. Therefore, if any installment of rent due from Tenant is not received by Landlord when due, Tenant shall pay to Landlord an additional sum of seven percent (7%) of the overdue rent as a late charge.  The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Landlord. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

**14.    Condemnation.** If the Premises or any portion thereof are taken under the power of eminent domain, or sold under the threat of the exercise of said power (all of which are herein called "condemnation"), this Lease shall terminate as to the part so taken as of the date the condemning authority takes title or possession, whichever first occurs. If more than 25% of the floor area of the building on the Premises, or more than 25% of the land area of the Premises which is not occupied by any building, is taken by condemnation, Tenant may, at Tenant's option, to be exercised in writing only within ten (10) days after Landlord shall have given Tenant written notice of such taking (or in the absence of such notice, within ten (10) days after the condemning authority shall have taken possession) terminate this Lease as of the date the condemning authority takes such possession. If Tenant does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect as to the portion of the Premises remaining, except that the rent shall be reduced in the proportion that the floor area of the building taken bears to the total floor area of the building situated on the Premises. Any award for the taking of all or any part of the Premises under the powers of eminent domain or any payment made under threat of the exercise of such power shall be the property of Landlord, whether such award shall be made as compensation for diminution in value of the leasehold or for the taking of the fee, or as severance damages; provided, however, that Tenant shall be entitled to any award to loss of or damage to Tenant's trade fixtures and removable personal property. In the event that this Lease is not terminated by reason of such condemnation, Landlord shall to the extent of severance damages received by Landlord in connection with such condemnation, repair any damage to the Premises caused by such condemnation except to the extent that Tenant has been reimbursed therefore by the condemning authority. Tenant shall pay any amount in excess of such severance damages required to complete such repair up to the amount, if any, of severance damages received by Tenant from the condemning authority.

**15.    Brokers.** Tenant represents and warrants to Landlord that it has not engaged the services of any real estate broker in connection with this Lease or Tenant's occupancy of the Premises. Tenant hereby indemnifies and holds Landlord harmless from and against any loss, cost, damage, claim, demand or expense, including attorney's fees and expenses, resulting from any breach by Tenant of the foregoing representation or any claim made by a broker for a commission or for the recovery of expenses in connection with any purported representation of Tenant.

**16.    Estoppel Certificate.**

(a) Tenant shall at any time upon not less than ten (10) days prior written notice from Landlord execute, acknowledge and deliver to Landlord a statement in writing (i) certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect) and the date to which the rent and other charges are paid in advance, if any and (ii) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults if any are claimed. Any such

statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Premises.

(b) At Landlord's option, Tenant's failure to deliver such statement within such time shall be a material breach of this Lease or shall be conclusive upon Tenant (i) that this Lease is in full force and effect, without modification except as may be represented by Landlord, (ii) that there are no uncured defaults in Landlord's performance, and (iii) that not more than one (1) installment, rent has been paid in advance or such failure may be considered by Landlord as a default by Tenant under this Lease.

(c) If Landlord desires to finance, refinance, or sell the Premises, or any part thereof, Tenant hereby agrees to deliver to any lender or purchaser designated by Landlord such financial statements of Tenant as may be reasonably required by such lender or purchaser. Such statements shall include the past three years' financial statements of Tenant. All such financial statements shall be received by Landlord and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

**17.    Landlord's Liability.** The term "Landlord" as used herein shall mean only the owner or owners at the time in question of the fee title or a Tenant's interest in a ground lease of the Premises, in the event of any transfer of such title or interest, Landlord herein named (and in case of any subsequent transfers then the grantor) shall be relieved from and after the date of such transfer of all liability as respects Landlord's obligations thereafter to be performed, provided that any funds in the hands of Landlord or the then grantor at the time of such transfer, in which Tenant has an interest, shall be delivered to the grantee. The obligations contained in this Lease to be performed by Landlord shall, subject as aforesaid, be binding on Landlord's successors and assigns, only during their respective periods of ownership.

**18.    Severability.** The invalidity of any provision of this Lease as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

**19.    Interest on Past-due Obligations.** Except as expressly herein provided, any amount due to Landlord not paid when due shall bear interest at the greater of five percent (5%) per annum or the maximum rate then allowable by law from the date due. Payment of such interest shall not excuse or cure any default by Tenant under this Lease, provided, however, that interest shall not be payable on late charges incurred by Tenant nor on any amounts upon which late charges are paid by Tenant.

**20.    Time of Essence.** Time is of the essence.

**21.    Additional Rent.** Any monetary obligations of Tenant to Landlord under the terms of this Lease shall be deemed to be rent.

22.   **Incorporation of Prior Agreements; Amendments.** This Lease contains all agreements of the parties with respect to any matter mentioned herein. No prior agreement or understanding pertaining to any such matter shall be effective. This Lease may be modified in writing only, signed by the parties in interest at the time of the modification. Tenant acknowledges that Tenant assumes all responsibility regarding the Americans with Disabilities Act, the Occupational Safety Health Act, and the legal use and adaptability of the Premises and the compliance thereof with all applicable laws and regulations in effect during the term of this Lease except as otherwise specifically stated in this Lease.

23.   **Notices.** Any notice required or permitted to be given hereunder shall be in writing and may be given by personal delivery or by certified mail, and if given personally or by mail, shall be deemed sufficiently given if addressed to Tenant or to Landlord at the address noted below the signature of the respective parties, as the case may be. Either party may by notice to the other specify a different address for notice purposes except that upon Tenant's taking possession of the Premises, the Premises shall constitute Tenant's address for notice purposes. A copy of all notices required or permitted to be given to Landlord hereunder shall be concurrently transmitted to such party or parties at such addresses as Landlord may from time to time hereafter designate by notice to Tenant.

24.   **Waivers.** No waiver by Landlord of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Tenant of the same or any other provision. Landlord's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant. The acceptance of rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

25.   **Memorandum of Lease.** Either Landlord or Tenant shall, upon request of the other, execute, acknowledge and deliver to the other a "short form" memorandum of this Lease but no such Memorandum shall be recorded.

26.   **Holding Over.** If Tenant, with Landlord's consent, remains in possession of the Premises or any part thereof after the expiration of the term hereof, such occupancy shall be a tenancy from month to month upon all the provisions of this Lease pertaining to the obligations of Tenant, but all options and rights of first refusal, if any, granted under the terms of this Lease shall be deemed terminated and be of no further effect during said month to month tenancy.

27.   **Cumulative Remedies.** No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

28.   **Covenants and Conditions.** Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition.

**29.    Binding Effect; Choice of Law.**  Subject to any provisions hereof restricting assignment or subletting by Tenant, this Lease shall bind the parties, their personal representatives, successors and assigns.  This Lease shall be governed by the laws of the State wherein the Premises are located.

**30.    Subordination.**

(a) ·    This Lease, at Landlord's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation or security now or hereafter placed upon the real property of which the Premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof.  If any mortgagee, trustee or ground lessor shall elect to have this Lease prior to the lien of its mortgage, deed of trust or ground lease, and shall give written notice thereof to Tenant, this Lease shall be deemed prior to such mortgage, deed of trust, or ground lease, whether this Lease is dated prior or subsequent to the date of said mortgage, deed of trust or ground lease or the date of recording thereof.

(b)    Tenant agrees to execute any documents required to effectuate an attornment, a subordination or to make this Lease prior to the lien of any mortgage, deed of trust or ground lease, as the case may be.  Tenant's failure to execute such documents within 10 days after written demand shall constitute a material default by Tenant hereunder, or, at Landlord's option, Landlord shall execute such documents on behalf of Tenant as Tenant's attorney-in-fact.  Tenant does hereby make, constitute and irrevocably appoint Landlord as Tenant's attorney-in-fact and in Tenant's name, place and stead, to execute such documents in accordance with this paragraph 30(b).

**31.    Attorney's Fees.**  If either party brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, on trial or appeal, shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the court.

**32.    Landlord's Access.**  Landlord and Landlord's agents shall have the right to enter the premises at reasonable times upon two (2) business days prior written notice to Tenant (excepting emergencies) for the purpose of inspecting the same, showing the same to prospective purchasers, lenders, or Tenants, and making such alterations, repairs, improvements or additions to the Premises or to the building of which they are a part as Landlord may deem necessary or desirable.  Landlord may at any time place on or about the Premises any ordinary "For Sale" signs and Landlord may at any time during the last 120 days of the term hereof place on or about the Premises any ordinary "For Lease" signs, all without rebate of rent or liability to Tenant.

**33.    Auctions.**  Tenant shall not conduct, nor permit to be conducted, either voluntarily or involuntarily, any auction upon the Premises without first having obtained Landlord's prior written consent.  Notwithstanding anything to the contrary in this Lease, Landlord shall not

be obligated to exercise any standard of reasonableness in determining whether to grant such consent.

**34.    Merger.** The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, or a termination by Landlord, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subtenancies or may, at the option of Landlord, operate as an assignment to Landlord of any or all of such subtenancies.

**35.    Quiet Possession.** Upon Tenant paying the rent for the Premises and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the entire term hereof subject to all of the provisions of this Lease. The individuals executing this Lease on behalf of Landlord represent and warrant to Tenant that they are fully authorized and legally capable of executing this Lease on behalf of Landlord and that such execution is binding upon all parties holding an ownership interest in the Premises.

**36.    Right of First Refusal.** Provided Tenant is not in default either at the time the option is exercised or at any closing pursuant thereto, Tenant shall have the right to purchase the Premises on the same terms and conditions as those offered Landlord by any bona fide prospective purchaser of the Premises, provided that Tenant agrees in writing to purchase the Premises on such terms and conditions within thirty (30) days after Landlord's delivery to Tenant of a notice setting forth the terms of the offer Tenant is required to match. If Tenant fails to timely elect to purchase the Premises or to provide any escrow money offered to Landlord by the prospective Purchaser, as and when stipulated in the offer Tenant is required to match, this right of first refusal shall thereupon be void and of no further force or effect.

**37.    Security Measures.** Tenant hereby acknowledges that the rental payable to Landlord hereunder does not include the cost of guard service or other security measures, and that Landlord shall have no obligation whatsoever to provide same. Tenant assumes all responsibility for the protection of Tenant, its agents and invitees from acts of third parties.

**38.    Authority.** If Tenant is a corporation, trust, or general or limited partnership, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of said entity. If Tenant is

a corporation, trust or partnership, Tenant shall, within thirty (30) days after execution of
this Lease, deliver to Landlord evidence of such authority satisfactory to Landlord.

**The parties hereto have executed this Lease at the place on the date specified
immediately adjacent to their respective signatures.**

LANDLORD:

Executed at Spensley Horn        BUILDERS BRASS WORKS OF NEVADA, INC.
Jubas & Lubitz
on  May 27, 1994                 By _____
at 1880 Century Park East               _VICE PRESIDENT_
Los Angeles, CA 90067
                                 By _____


TENANT:

Executed at Spensley Horn        JACKSON CORPORATION
Jubas & Lubitz
on  May 27, 1994                 By _____
at 1880 Century Park East
Los Angeles, CA 90067
                                 By _____


                                 JEBRON LIMITED
Executed at Spensley Horn
Jubas & Lubitz                   By _____
on May 27, 1994
at 1880 Century Park East        By _____ _Director_ _____
Los Angeles, CA 90067


## Guaranty of Certain Landlord Obligations


        For valuable consideration received from Jackson Corporation and Jebron
Limited, Tenant under the above-stated Lease dated the date hereof with Builders Brass
Works of Nevada, Inc., as Landlord, Thomas Industries Inc., a Delaware corporation
("Guarantor"), hereby unconditionally guarantees the full performance of Landlord's
obligations pursuant to paragraphs 6.2(c), 6.2(d)(2), 6.2(e), 7.1 and 9 of the above Lease.
Tenant, its successors and assigns, may enforce this Guaranty directly against Guarantor
without resort to Tenant's remedies under the Lease, it being understood and agreed that this
Guaranty constitutes a guaranty of payment and performance and not a guaranty of
collection.  In connection with the enforcement of this Guaranty, Guarantor consents to
venue and jurisdiction in the State of California and in the County of Los Angeles where the

Premises are located. This Guaranty shall be binding on and inure to the benefit of the successors and assigns of the Guarantor and shall not be impaired or invalidated by any sale, transfer or exchange of title to the Premises which operates to release Tenant from its obligations under this Lease or by any amendment to or modification of this Lease other than an amendment to or modification of paragraphs 6.2, 7.1 or 9, which latter amendment or modification will require the consent of Guarantor. Any notice or demand made upon Guarantor shall be delivered to the address provided for in the Asset Purchase Agreement. This Guaranty shall survive the termination of this Lease and the period of survival of the representations and warranties and the effectiveness of the covenants in the Asset Purchase Agreement.

THOMAS INDUSTRIES INC.

By: _____
      Name: C. Barr Schuler
      Title: Vice President
      Date: May 27, 1994

## AMENDMENT TO STANDARD INDUSTRIAL LEASE - SPECIAL NET

THIS AMENDMENT TO STANDARD INDUSTRIAL LEASE - SPECIAL NET (the "Amendment") is entered into and effective as of _12-31____, 1999, by and between (i) BUILDERS BRASS WORKS OF NEVADA, INC. ("Landlord"), a Nevada corporation, (ii) JACKSON CORPORATION ("Jackson"), a California corporation, (iii) JEBRON LIMITED ("Jebron"), a corporation organized and existing under the laws of England and Wales, and (iv) THOMAS INDUSTRIES INC., a Delaware corporation ("Thomas"). Jackson and Jebron are collectively referred to herein as "Tenant".

RECITALS:

A.    Landlord and Tenant have entered into that certain Standard Industrial Lease - Special Net (the "Lease"), dated as of May 27, 1994, pursuant to which Landlord has demised to Tenant, and Tenant has leased from Landlord, certain real property located at 3447, 3474, 3453, 3457 and 3482 Union Pacific Avenue, 3450 East 14th Street and 3475 East 15th Street, Los Angeles, California 90023 (collectively, the "Premises").

B.    The parties hereto desire to amend the Lease for the purpose of modifying certain terms of the Lease, as described herein.

AGREEMENT:

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

1. TERM OF LEASE. Section 3.1 of the Lease is hereby amended in its entirety to read as follows:

> The term of the Lease shall be for 11 years, commencing on May 27,
> 1994 and ending on May 31, 2005, unless sooner terminated pursuant to
> any provision hereof.

2. RENT. Section 4.1 of the Lease is hereby amended to reflect that Tenant shall pay to Landlord as annual rent for the Premises the sum of TWENTY-TWO THOUSAND DOLLARS ($22,000) through May 31, 2000, unless sooner terminated pursuant to any provision of the Lease. On June 1, 2000 and thereafter for the remainder of the term of the Lease as extended hereby, Tenant shall pay to Landlord as annual rent for the Premises the sum of THIRTY-FIVE THOUSAND DOLLARS ($35,000), unless sooner terminated pursuant to the any provision of the Lease. As set forth in the Lease, annual rent shall be payable in equal installments, in advance semi-annually, on the first day of June and December for each year during the term.

3. AMENDMENT. The terms of the Lease are hereby amended by the terms of this Amendment. The term, "Lease," wherever used in the Lease or in this Amendment, shall mean the Lease, as amended by this Amendment. This Amendment shall have priority and govern over any

conflicting or inconsistent provisions of the Lease, whether written or typed.

**4. REAFFIRMATION.** Except as modified by this Amendment, the Lease shall remain and continue in full force and effect as heretofore existing. Landlord and Tenant both hereby reaffirm the Lease as modified by this Amendment and agree that the Lease remains in full force and effect, without default by any party hereto as of the date hereof.

5. MISCELLANEOUS.

*5.1 Counterparts.* The Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

*5.2 Construction and Interpretation.*

*(a)* All captions in this Amendment are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provisions hereof. All references herein to the masculine, neuter, or singular shall be construed to include the masculine, feminine, neuter, or plural.

*(b)* The parties agree that each provision to this Amendment shall be construed independent of any other provision of this Amendment. The invalidity or non-enforceability of any particular provision of this Amendment shall not affect the other provisions hereof. This Amendment shall be construed in all respects as if such invalid or unenforceable provision were omitted.

*5.3 Binding Effect.* All of the terms, provisions and conditions of this Amendment shall be binding on, and shall inure to and be enforceable by, the parties hereto and their respective successors and assigns.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]**

IN WITNESS WHEREOF, the parties have entered into this Amendment as of the date first written above.

BUILDERS BRASS WORKS OF NEVADA, INC.

By: _Ronald D. Wiseman_

Printed Name: RONALD D. WISEMAN

Title: TREASURER

("Landlord")


JACKSON CORPORATION

By: _M. David Brown_

Printed Name: M. DAVID BROWN

Title: PRESIDENT

("Tenant")


JEBRON LIMITED

By: _M. David Brown_

Printed Name: M. DAVID BROWN

Title: CHAIRMAN.

("Tenant")


THOMAS INDUSTRIES INC.

By: _Ronald D. Wiseman_

Printed Name: RONALD D. WISEMAN

Title: TREASURER

("Thomas")


LOU:C05824.1

-3-

## AMENDMENT TO STANDARD INDUSTRIAL LEASE – SPECIAL NET

**THIS AMENDMENT TO STANDARD INDUSTRIAL LEASE – SPECIAL NET** (the "Amendment") is entered into and effective as of June 1, 2005, by and between (i) **BUILDERS BRASS WORKS OF NEVADA, INC.** ("Landlord"), a Nevada corporation, (ii) **JACKSON CORPORATION** ("Jackson"), a California corporation, (iii) **JEBRON LIMITED** ("Jebron"), a corporation organized and existing under the laws of England and Wales, and (iv) **THOMAS INDUSTRIES INC.**, a Delaware corporation ("Thomas"). Jackson and Jebron are collectively referred to herein as "Tenant".

### RECITALS:

    **A.**    Landlord and Tenant have entered into that certain Standard Industrial Lease – Special Net ("the Lease"), dated as of May 27, 1994, pursuant to which Landlord has demised to Tenant, and Tenant has leased from landlord, certain real property located at 3447, 3474, 3453, 3457 and 3482 Union Pacific Avenue, 3450 East 14th Street and 3475 East 15th Street, Los Angeles, California 90023 (collectively, the "Premises").

    **B.**    The parties hereto desire to amend the Lease for the purpose of modifying certain terms of the Lease, as described herein.

### AGREEMENT:

    **NOW, THEREFORE,** in consideration of the premises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

**1. TERM OF THE LEASE.** Section 3.1 of the Lease is hereby amended in its entirety to read as follows:

> The term of the Lease shall be for 3 years, commencing on June 1, 2005 and ending on May 31, 2008, unless sooner terminated pursuant to any provision hereof.

**2. RENT.** Section 4.1 of the Lease is hereby amended to reflect that Tenant shall pay to Landlord as annual rent for the Premises the sum of THIRTY FIVE THOUSAND DOLLARS ($35,000) through May 31, 2005, unless sooner terminated pursuant to any provision of the Lease. On June 1, 2005 and thereafter for the remainder of the term of the Lease as extended hereby, Tenant shall pay to Landlord as annual rent for the Premises the sum of FORTY THOUSAND DOLLARS ($40,000), unless sooner terminated pursuant to any provision of the Lease. As set forth in the Lease, annual rent shall be payable in equal installments, in advance semi-annually, on the first day of June and December for each year during the term.

**3. AMENDMENT.** The terms of the Lease are hereby amended by the terms of this Amendment. The term, "Lease," wherever used in the Lease or in this Amendment, shall mean the Lease, as amended by this Amendment. This Amendment shall have priority and govern over any conflicting or inconsistent provisions of the Lease, whether written or typed.

**4. REAFFIRMATION.** Except as modified by this Amendment, the Lease shall remain and continue in full force and effect heretofore existing. Landlord and Tenant both hereby reaffirm

the Lease as modified by this Amendment and agree that the Lease remains in full force and effect, without default by any party hereto as of the date hereof.

## 5. MISCELLANEOUS.

**5.1 Counterparts.** The Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

### 5.2 Construction and Interpretation.

(a) All captions in this Amendment are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provisions hereof. All references herein to the masculine, neuter, or singular shall be constructed to include the masculine, feminine, neuter or plural.

(b) The parties agree that each provision to this Amendment shall be constructed independent of any other provision of this Amendment. The invalidity or non-enforceability of any particular provision of this Amendment shall not affect the other provisions hereof. This Amendment shall be constructed in all respects as if such invalid or unenforceable provision were omitted.

**5.3 Binding Effect.** All of the terms, provision and conditions of this Amendment shall be binding on, and shall inure to and be enforceable by, the parties hereto and their respective successors and assigns.

[THE REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]

**IN WITNESS THEREOF,** the parties have entered into this Amendment as of the date first written above.

BUILDERS BRASS WORKS OF NEVADA, INC.

By: _____
Printed Name: _____
Title: _____

JACKSON CORPORATION

By: _____
Printed Name: _____
Title: _____

JEBRON LIMITED

By: _____
Printed Name: _____
Title: _____

THOMAS INDUSTRIES INC.

By: _____
Printed Name: _____
Title: _____

## AMENDMENT TO STANDARD INDUSTRIAL LEASE SPECIAL NET

**THIS AMENDMENT TO STANDARD INDUSTRIAL LEASE - SPECIAL NET** (this "Amendment") is entered into and effective as of June 1, 2008, by and between (i) **THOMAS INDUSTRIES INC.**, a Delaware corporation and successor in interest to Builders Brass Works of Nevada, Inc. ("Landlord"), (ii) **JACKSON CORPORATION**, a California corporation ("Jackson"), and (iii) **JEBRON LIMITED**, a corporation organized and existing under the laws of England and Wales ("Jebron"). Jackson and Jebron are collectively referred to herein as "Tenant."

**RECITALS:**

A.    Landlord and Tenant have entered into that certain Standard Industrial Lease - Special Net, dated as of May 27, 1994 (as amended December 31, 1999 and June 1, 2005, the "Lease"), pursuant to which Landlord has leased to Tenant certain real property located at 3447, 3453, 3457, 3474 and 3482 Union Pacific Avenue, 3450 East 14th Street and 3475 East 15th Street, Los Angeles, California 90023 (collectively, the "Premises").

B.    The parties hereto desire to amend the Lease for the purpose of modifying certain terms of the Lease, as described herein.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

**1.    TERM.**    The term of this Lease shall be renewed for another two years, commencing on June 1, 2008 and ending on May 31, 2010, unless sooner terminated pursuant to any provision of the Lease.

**2.    RENT.**    Section 4.1 of the Lease is hereby amended to reflect that Tenant shall pay to Landlord as annual rent for the Premises the sum of FORTY THOUSAND DOLLARS ($40,000) through May 31, 2008, unless sooner terminated pursuant to any provision of the Lease.    On June 1, 2008 and thereafter for the remainder of the term of the Lease as extended hereby, Tenant shall pay to Landlord as annual rent for the Premises the sum of FORTY-EIGHT THOUSAND DOLLARS ($48,000), unless sooner terminated pursuant to any provision of the Lease.    Beginning June 1, 2008, annual rent shall be payable in equal monthly installments, in advance, on the first day of each month during the term.

**3.    SECURITY DEPOSIT.**    Section 5 of the Lease is hereby amended in its entirety to read as follows: "On or prior to June 1, 2008, Tenant shall deposit the equivalent of one months' rent as a Security Deposit.    The Security Deposit shall be held by Landlord, without interest, as security for Tenant's performance under this Lease, and not as an advance payment of rent or a measure of Landlord's damages.    In the event of default by the Tenant or any damage to the Premises caused by Tenant, its employees or invitees, Landlord may, without prejudice to any other remedy, use the Security Deposit to cure such default or repair any damage.    Following any application of the Security Deposit, Tenant shall, on demand, restore the Security Deposit to its original amount.    If Tenant is not in default hereunder, any remaining balance of the Security Deposit shall be returned to Tenant upon termination of this Lease.    If Landlord transfers its interest in the Premises, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the Security Deposit.

**4.    AMENDMENT.**    The terms of the Lease are hereby amended by the terms of this Amendment. The term, "Lease," wherever used in the Lease or in this Amendment, shall mean the Lease, as amended by this Amendment. This Amendment shall have priority and govern over any conflicting or inconsistent provisions of the Lease, whether written or typed.

**5.    REAFFIRMATION.**    Except as modified by this Amendment, the Lease shall remain and continue in full force and effect. Landlord and Tenant both hereby reaffirm the Lease as modified by this Amendment and agree that the Lease remains in full force and effect, without default by any party hereto as of the date hereof.

**6.    MISCELLANEOUS.**

**6.1 Counterparts.**   This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

**6.2 Construction and Interpretation.**

(a)  All captions in this Amendment are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provisions hereof.

(b)  The parties agree that each provision of this Amendment shall be construed independent of any other provision of this Amendment.   The invalidity or non-enforceability of any particular provision of this Amendment shall not affect any other provisions hereof.   This Amendment shall be construed in all respects as if such invalid or unenforceable provision were omitted.

**6.3 Binding Effect.**   All of the terms, provisions and conditions of this Amendment shall be binding on, and shall inure to and be enforceable by, the parties hereto and their respective successors and assigns.

**IN WITNESS THEREOF,** the parties have entered into this Amendment as of the date first written above.

THOMAS INDUSTRIES INC.

By:
Name:     Tracy D. Paghara
Title:     Vice President and Secretary

JACKSON CORPORATION

By:
Name:   Robert Rivera
Title:   Vice President - G. M.

JEBRON LIMITED

By:
Name:   M DAVID BROWN
Title:   CHAIRMAN

| In re: Jackson Corporation, a California Corporation | CHAPTER 11 |
| Debtor(s). | CASE NUMBER: LA 09 – 10594 - VZ |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16000 Ventura Blvd. Suite 1000, Encino, California 91436

The foregoing document described **DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING ASSUMPTION OF UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY [11 U.S.C. §365(a) and (b)]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD LASKI** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 11, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 11, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 11, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 11, 2009

_____          _____
                                            Moran Kerpik

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                    **F 9013-3.1**

## SERVICE LIST

Office of the U.S. Trustee
Attn:  Dare Law, Esq.
725 S Figueroa St., 26th
Floor
Los Angeles, CA 90017
Fax: (213) 894-2603

Jackson Corporation
3447 Union Pacific
Avenue
Los Angeles, CA 90023
Email:
rlaski@wilshirellc.com
Fax: 323-269-1872
Ph: 323-269-8111

Judge Vincent P. Zurzolo
255 East Temple St.
Suite 1360
Los Angeles, CA 90012

David & Helena Brown
20 Western Ave.
Halesowen
West Midlands B62 8QH,
UK
Via Email:
david@jacksonexit.com
Fax: 011 44 121 422 0510

### Secured Creditors

First Federal Bank
12555 W. Jefferson Blvd.
3rd Floor
Los Angeles, Ca. 90066
Attn: Linda Shreeves
Email:
lshreeves@firstfedca.com
Fax: 310-302-5601
Phone: 310-302-5604

Intech of California
8424 Secura Way
Santa Fe Springs, CA
90670
Fax: 626-301-9944
Phone: 800-564-1849

Ford Credit
P.O. Box 7172
Pasadena, CA 91109-7172
Fax: 415-315-2943
Phone: 800-955-8532

Volvo Car Finance North
America
Dept. 193901
P.O. Box 55000
Detroit, MI 48255-1939
Fax: 615-315-3607
Phone: 800-955-8532

**Request for Special Ntc.**
Kathryn J. Halford, Esq.
Dana K. Kann, Esq.
Wohlner, Kaplon, Phillips
Young & Cutter
APC
15456 Ventura Blvd., Ste.
500
Sherman Oaks, CA  91403
Phone: (818) 501-8030
Fax: (818) 501-5306
Email:  dkann@wkpyc.com

**Attorneys for Committee**
Scott C Clarkson, Esq.
Christine M. Fitzgerald, Esq.
Clarkson, Gore & Marsella,
APLC
3424 Carson St Ste 350
Torrance, CA 90503
Phone: 310-542-0111
Fax :   310-214-7254
Email:
    sclarkson@lawcgm.com
    cfitzgerald@lawcgm.com

**Twenty Largest Unsecured
Creditors**

Rochester Metal
PO Box 488
616 Indiana Ave.
Rochester, IN 46975
Fax: 626-810-8433
Phone: 626-810-8400

Aluminio de Baja
California
PO Box 1399
Chula Vista, CA 91912-
1399
Fax: 011-52-664-636-1450
Phone: 619-308-7839

Com-Air Screw Machine Co.
11352 El Dorado Ave.
San Fernando, CA 91340
Fax: 818-361-8200
Phone: 818-361-0230

Loeb & Loeb
10110 Santa Monia Blvd
Suite 2200
Los Angeles, CA 90067
Fax: 310-282-2200
Phone: 310-282-2000

Gregg Industries
PO Box 689978
Milwaukee, WI 53268-9978
Fax: 626-575-3025
Phone: 626-575-7664

Glamour & Co., LTD
2F., No. 2, Lane 1
Qingtian St.
Taipei, Taiwan, R.O.C.
Fax: 011-8862-2395-5486
Phone: 626-357-0077

First Bankcard
PO Box 2814
Omaha, NE 68103-2814
Fax: 605-668-5335
Phone: 800-819-4249

Cox Die Casting
1528 W, 178th St.
Gardena, CA 90248
Fax: 310-532-8588
Phone: 310-532-7544

Askew
2920 Supply Ave.
Los Angeles, CA 90040
Fax: 323-201-5227
Phone: 323-727-7772

Vinanco Engineering Co.
20952 Itasca
Chatsworth, CA 91311
Fax: 818-700-0549
Phone: 818-387-5797

Roger Sanderson, Committee
Chair
International Cargo West
555 East Ocean Blvd, Suite
220
Long Beach, 90802
Fax: 562-495-4855
Phone: 562-495-6511

Kent Landsberg
1900 W. University Dr.
Suite 101
Tempe, AZ 85281
Fax: 480-333-6661
Phone: 480-333-6720

Haas Factory Outlet
580 Madrid Ave.
Torrance, CA 90501
Fax: 310-381-0744
Phone: 310-381-0750

Southern California Metals
9900 Bell Ranch Dr.
Santa Fe Springs, CA 90670
Fax: 562-941-2709
Phone: 562-941-1616

Stonefield Josephson, Inc.
2049 Century Park East
Los Angeles, CA 90067
Fax: 310-453-1187
Phone: 310-453-9400

Associated Builders Prod.
Inc.
3963 Catalina Dr.
Marietta, GA 30066-2852
Fax: 770-517-8141
Phone: 770-517-8140

Best Way Stamping
14943 Desman Rd.
La Mirada, CA 90638
Fax: 714-994-2172
Phone: 714-994-1995

127010.1  300795.0002

Epicor
18200 Von Karman
Suite 1000
Irvine, CA 92612
Fax: 949-585-4091
Phone: 949-585-4000

Everest Metal Products
Ltd.
17890 Castleton St.
#109
Rowland Heights, CA
91748
Fax: 626-810-8433
Ph: 626-810-8400

Fed-Ex National LTL
P.O. Box 95001
Lakeland, FL 33804-5001
Fax: 863-687-4707
Ph: 800-284-4544 x 5529