1    DOUGLAS M. NEISTAT, ESQ. (State Bar No. 055961)
     dneistat@greenbass.com
2    GREENBERG & BASS LLP
     16000 Ventura Boulevard, Suite 1000
3    Encino, California 91436
     Tel: (818) 382-6200 • Fax: (818) 986-6534
4
     Attorneys for Debtor and Debtor-in-Possession
5    Jackson Corporation

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                       LOS ANGELES DIVISION

11   In re                              Case No.: 2:09-bk-10594-VZ

12   JACKSON CORPORATION, a California   (Chapter 11)
     corporation,
13                                       **DISCLOSURE STATEMENT AND PLAN**
                        Debtor.          **OF REORGANIZATION FOR JACKSON**
14                                       **CORPORATION**

15

16                                       Date:        December 17, 2009
                                         Time:        1:30 P.M.
17                                       Ctrm:        Courtroom 1368
                                                      Roybal Federal Building
18                                                    255 E. Temple Street
                                                      Los Angeles, CA  90012
19

20

21

22

23

24

25

26

27

28

160569.1  30795.0002

1

2

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................**2**

I.      INTRODUCTION...................................................................................3

II.     GENERAL DISCLAIMER AND VOTING PROCEDURE......................3

III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN...............4

IV.     WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN .................4

V.      VOTES NECESSARY TO CONFIRM THE PLAN................................6

VI.     INFORMATION REGARDING VOTING IN THIS CASE ....................7

VII.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS
        PRECIPITATING BANKRUPTCY FILING .........................................7

VIII.   CRITICAL PLAN PROVISIONS .........................................................8

IX.     DESCRIPTION AND TREATMENT OF CLAIMS ...............................9

X.      SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS .................21

XI.     FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
        PAYMENT IS FEASIBLE....................................................................23

XII.    ASSETS AND LIABILITIES OF THE ESTATE..................................23

XIII.   TREATMENT OF NONCONSENTING CLASSES ...............................24

XIV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING
        CLASS (CHAPTER 7 LIQUIDATION ANALYSIS) ..............................25

XV.     FUTURE DEBTOR ...............................................................................25

XVI.    SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
        LEASES; OTHER PROVISIONS ..........................................................28

XVII.   BANKRUPTCY PROCEEDINGS .........................................................28

XVIII.  TAX CONSEQUENCES OF PLAN ......................................................29

XIX.    EFFECT OF CONFIRMATION OF PLAN............................................30

XX.     DECLARATIONS IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN .......32

160569.1  30795.0002

# I.

## **INTRODUCTION**

On January 12, 2009, Jackson Corporation, a California corporation ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). The document you are reading is both the Plan of Reorganization ("Plan") and the Disclosure Statement. The Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs. A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved Courtroom 1368 on December 17, 2009 at 1:30 P.M. for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: Douglas M. Neistat, Greenberg & Bass, LLC, 16000 Ventura Blvd., Suite 1000, Encino, CA 91436, phone (818) 382-6200, and fax (818) 986-6534.

# II.

## **GENERAL DISCLAIMER AND VOTING PROCEDURE**

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW. ALL

160569.1  30795.0002

1 │ REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

2 │ NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT

3 │ WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF

4 │ AT ALL, THAT THE COURT ORDERS OTHERWISE.

5 │ After carefully reviewing this document and the attached exhibits, please vote on the

6 │ enclosed ballot and return it in the enclosed envelope.

7 │ The Proponent has reserved a hearing date for a hearing to determine whether the Court will

8 │ confirm the Plan. Please refer to Section I above for the specific hearing date. If, after receiving the

9 │ ballots, it appears that the Proponent has the requisite number of votes required by the Code, the

10 │ Proponent will file a motion for an order confirming the Plan.

11 │ The Motion shall at least be served on all impaired creditors and partners or shareholders

12 │ who reject the Plan and on the Office of the United States Trustee. Any opposition to the Motion

13 │ shall be filed and served on the Proponent no later than eleven days prior to the hearing date. Failure

14 │ to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

15 │ **III.**

16 │ **WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

17 │ Any party in interest may object to confirmation of the Plan, but as explained below not

18 │ everyone is entitled to vote to accept or reject the Plan.

19 │ **IV.**

20 │ **WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

21 │ It requires both an allowed and impaired claim or interest in order to vote either to accept or

22 │ reject the Plan. A claim is defined by the Code to include a right to payment from the Debtor. An

23 │ interest represents an ownership stake in the Debtor.

24 │ In order to vote a creditor or interest-holder must first have an allowed claim or interest. With

25 │ the exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed

26 │ before any bar date and no party in interest has objected, or if the court has entered an order allowing

27 │ the claim or interest. Please refer to Section VI below for specific information regarding bar dates in

28 │

160569.1 30795.0002

1   this case.

2       Under certain circumstances a creditor may have an allowed claim even if a proof of claim

3   was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if

4   the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or

5   unliquidated.  Exhibit "A" contains a list of claims that are not scheduled as disputed, contingent, or

6   unliquidated.  For purposes of added disclosure, Exhibit "A" also provides a listing by class of all

7   scheduled claims, all claims for which a Proof of Claim was filed, claim amounts assumed for the

8   Plan., and explanatory footnotes.

9       Similarly, an interest is deemed allowed if it is shown on the list of equity security holders

10  filed by the Debtor with the court and is not scheduled as disputed.

11      In order to vote, an allowed claim or interest must also be impaired by the Plan.

12      Impaired creditors include those whose legal, equitable, and contractual rights are altered by

13  the Plan, even if the alteration is beneficial to the creditor.  Creditors who receive cash in full equal

14  to their allowed claim by the effective date would be considered impaired.  A contract provision that

15  entitles a creditor to accelerated payment upon default does not, however, necessarily render the

16  claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with

17  accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default,

18  reinstates the maturity of such claim as it existed before default, compensates for any damages

19  incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default

20  arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West

21  Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform

22  a non-monetary obligation.

23      Impaired interest-holders include those whose legal, equitable, and contractual rights are

24  altered by the Plan, even if the alteration is beneficial to the interest holder.  Similarly, an interest

25  holder who receives the greater of any fixed liquidation preference to which the terms of any

26  security representing such interest entitle the interest holder or any fixed price at which the Debtor,

27  under the terms of such security, may redeem such security from such holder is deemed impaired.

28

- 5 -

160569.1  30795.0002

1    There are also some types of claims that the Code requires be treated a certain way.  For that

2    reason they are considered unimpaired and therefore holders of these claims cannot vote.

3    To summarize, there are two prerequisites to voting: a claim or interest must be both allowed

4    and impaired under the Plan.

5    If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she

6    may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to

7    have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that

8    must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they

9    may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan

10   may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the

11   Code.  Please refer to Section VI below for information regarding impaired and unimpaired classes

12   in this case.

13   Section IX sets forth which claims are in which class.  Secured claims are placed in separate

14   classes from unsecured claims.  Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has

15   been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept

16   or reject a plan in both capacities."

17   ## V.

18   ## VOTES NECESSARY TO CONFIRM THE PLAN

19   The Court may confirm the Plan if at least one noninsider impaired class of claims has

20   accepted and certain statutory requirements are met as to both nonconsenting members within a

21   consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more

22   than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote

23   in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of

24   the allowed interests of such class actually voting have accepted it.  It is important to remember that

25   even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the

26   parties unless and until the Court makes an independent determination that confirmation is

27   appropriate.  That is the subject of any upcoming confirmation hearing.

28

- 6 -

160569.1  30795.0002

# VI.

## INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was May 29, 2009. However, the claims bar date for insiders has been extended until December 31, 2009.

The bar date for objecting to claims was October 1, 2009.

In this case the Proponent believes that Classes 1, 2, 3, 6, 7, 8, and 9 are impaired and therefore entitled to vote. Classes 4 and 5 are unimpaired and therefore do not vote. A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent, addressed to Debtor's counsel, as follows: Douglas M. Neistat, Greenberg & Bass, LLC, 16000 Ventura Blvd., Suite 1000, Encino, CA 91436 by _____.

# VII.

## DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS
## PRECIPITATING BANKRUPTCY FILING

The Debtor is a corporation.

Debtor conducted all of its business activity in Los Angeles, California since the 1950's.

What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

The Chapter 11 case was precipitated by economic forces in the last quarter of 2008 resulting in a significant downturn in business. Cash flow difficulties actually preceded the downturn and the Company's owners provided the capital necessary to keep the business running. David and Helena Brown, residents of the United Kingdom have owned Jackson Corporation for approximately 15 years. They are its largest unsecured creditors.

What follows is a brief description of the Debtor's business and future business plans. Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

160569.1  30795.0002

1  Jackson Corporation is an ISO 9001 certified manufacturer of door hardware, including

2  access controls, exit devices, closers, lever trim, pivots and accessories. For over 50 years the

3  Company has manufactured the highest quality door hardware to the aluminum and tempered glass

4  industry. Certain of its product line are patent protected.    Within the industry the product is

5  generally recognized at the high end of the market and its installations are world wide.

6  Domestically, for example, every In & Out Restaurant installs Jackson Corporation panic bars. The

7  restaurant chain uses the Company's specifications at all locations.

8  Post petition operations are proceeding as scheduled and projected. Prior to the filing, the

9  Company was generating gross sales revenue of around $12 million per year ($1 million per month).

10  It achieved these financial results with a work force of 95 people during the early part of 2008.

11  During the fourth quarter of 2008, management decided on a significant reduction in its workforce.

12  The Company now operates with 38 employees. With the reduction in work force and decline in



13  business, revenue is now down to $500,000 per month (i.e., $125,000 per week). The Company can

14  sustain itself at this rate without further sales and marketing expenses. The demand for product is

15  such that new business can be initiated by order takers.

16  ## VIII.

17  ## CRITICAL PLAN PROVISIONS

18  Listed below are the sources of money earmarked to pay creditors and interest-holders.

19  a.    Future earnings from continued operations of the Debtor.

20  b.    Cash on hand on the Effective Date.

21  Most likely, general unsecured creditors can expect payment on:

22  a.    payments would start in 2016

23  b.    in the amount of $104,000 in 2016

24  c.    and continuing every year through 2019 with projected payments as follows:

25

26  $153,000 in 2017, $196,000 in 2018, and $243,000 in 2019.

27

28

160569.1  30795.0002

# IX.

## DESCRIPTION AND TREATMENT OF CLAIMS

### A.    Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts.  First, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid.  The Proponent is usually not required by law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to, had a bankruptcy case not commenced.  The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Payment" column describes the expected source of payment.  Further details regarding the source of payment are found in sections X and XI.

The timing of payments to many creditors is determined by the "Effective Date."  Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to impaired creditors is measured from the Effective Date.  In this case, the Effective Date of the proposed Plan is 30 days after entry of the Order confirming the Plan of Reorganization.  For planning purposes in this document, the Effective Date is assumed to be April 1, 2010.

///
///
///
///
///
///
///
///
///

160569.1  30795.0002

| SUMMARY OF PLAN PAYMENTS | | | |
|---|---|---|---|
| **Payment Recipient** | **Amount of Each Payment and [Total to be Paid]** | **Payment Due Date** | **Source of Payment** |
| a.  Greenberg & Bass, LLP (Debtor's Counsel) | 50,000 (est) [50,000] (est) | Within 60 days from Effective Date | Cash on hand + Post-confirmation income |
| b.  Clarkson, Gore & Marsella, APLC (Creditors' Committee Counsel) | 25,000 (est) [25,000] (est) | Within 60 days from Effective Date | Cash on hand + Post-confirmation income |
| c.  Connolly Bove Lodge & Hutz LLP (Intellectual Property Counsel) | 2,000 (est) [2,000] (est) | Within 60 days from Effective Date | Cash on hand + Post-confirmation income |
| d.  Prolman Associates (Financial and Restructuring Advisors) | 18,000 (est) [18,000] | Within 60 days from Effective Date | Cash on hand + Post-confirmation income |
| e.  Office of U.S. Trustee (OUST) | 6,500 (est) [6,500] (est) | Effective date | Cash on hand + Post-confirmation income |
| f.  Clerk of the Court | 0 [0] | N/A | N/A |
| g.  Priority Tax Claims - Sec.507(a)(8) | 726 [726] | Within 90 days from Effective Date | Cash on hand + Post-confirmation income |
| h.  Class 1: Secured Creditor First Federal Bank (all assets) | varies [2,359,241] | Monthly 2010 – 2019 | Post-confirmation income |
| i.  Class 2:  Secured Creditor Intech of CA (Haas VF-4 Machine) | 1,600 [50,000] | Monthly 2010 – payoff date | Post-confirmation income |
| j.  Class 3: Secured Creditor Ford Credit (2005 Ford Freestyle) | Already paid off [0] | N/A | N/A |
| k.  Class 4: Secured Creditor Ford Credit (2007 Ford 500 SEL) | 452 [8,900] | Monthly 2010 – payoff date | Post-confirmation income |
| l.  Class 5: Secured Creditor Volvo Car Finance | 490 [16,000] | Monthly 2010 – payoff date | Post-confirmation income |
| m.  Class 6: Sec. 507(a)(4) Priority Wages – Active Employees | Varies [123,284] | Monthly 2010 | Post-confirmation income |
| n.  Class 7: Sec. 507(a)(4) Priority Wages – Terminated Employees | 28,000 [112,501] | Quarterly 2010 | Post-confirmation income |
| o.  Class 8: General Unsecured Claims | Varies [696,000] | Annual 2016 - 2019 | Post-confirmation income |
| p.  Class 9: Equity Holders | 0 [0] | N/A | N/A |

All claims listed below are undisputed except the unsecured non-priority insider claim of David and Helena Brown in the amount of $1,409,028.  This claim is not disputed by the debtor, but

- 10 -

160569.1  30795.0002

1   the Creditors' Committee has been given an extension until December 31, 2009 to file an objection

2   to this claim.  No claimant or interest holder is an affiliate of the Debtor except David and Helena

3   Brown.

4     As Plan payments become due for disputed claims or for claims for which objections have

5   not been resolved, the Disbursing Agent will deposit into a segregated account an amount of cash

6   equal to the disputed payment.  Cash together with interest accruing thereon will be held in trust for

7   the benefit of holders of disputed claims.

8     When a disputed claim becomes allowed, the Disbursing Agent will distribute to the holder

9   thereof an amount equal to the claim payment plus accrued interest thereon.  If a surplus arises from

10  the fact that not all claims are allowed, then that money shall revert back to the debtor.

11  Below is a detailed description and treatment of administrative expenses, claims and interests

12    **B.**  **Administrative Expenses**

13      1.  These include the "actual, necessary costs and expenses of preserving the

14        estate" as determined by the Court after notice to creditors of a request for

15        payment and after a hearing thereon.

16      2.  The Code requires that allowed administrative expenses be paid on the

17        effective date unless the parties holding the administrative expense agree

18        otherwise.  The claimants have agreed to be paid over time.

19

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

160569.1 30795.0002

<u>Administrative Expense #1.</u>

Claimant: Greenberg & Bass, LPP

$ 50,000 (estimate), subject to court approval

<u>Administrative Expense # 2.</u>

Claimant: Clarkson, Gore & Marsella

$ 25,000 (estimate), subject to court approval

<u>Administrative Expense #3.</u>

Claimant: Connolly Bove Lodge & Hutz LLP

$ 2,000 (estimate), subject to court approval

<u>Administrative Expense # 4.</u>

Claimant: Prolman Associates

$ 18,000 (estimate), subject to court approval

<u>Administrative Expense #5.</u>

Claimant:  Office of U.S. Trustee (for quarterly fees)

$ 6,500 (estimate)

<u>Administrative Expense # 6.</u>

Claimant: Clerk of the Court

$ 0

TOTAL $ 101,500

**C.**     **Unsecured Tax Claims**

3.     These include certain types of property, sales, and income taxes.

4.     The Code requires that the holders of such claims receive regular installment

payments in cash over a period ending not later than five years after the date

of the order for relief, unless agreed otherwise.  The claimant has not agreed

160569.1  30795.0002

otherwise.  The total cash payments must have a present value equal to the

amount of the allowed claim.  The treatment of this claim is in a manner not

less favorable than the most favored nonpriority unsecured claim provided in

this Plan (other than any cash payments to an administratively convenient

class). The amount of the allowed claim includes the amount of tax owed plus

interest of 5 %.  The present value is calculated as of the effective date.

Tax Claim # 1.

Claimant: Ca State Board of Equalization

Date(s) of order for relief: N/A

Total amount of allowed claim as of 10/1/09:

Total amount of cash payments (over time) to satisfy the claim: $726

Interest rate (to compensate creditor because claim is  paid over time): statute rate

First payment date: within 90 days from Effective date

Amount of each installment: $726.

Frequency of payments: one

Total yearly payments: N/A

Final Payment date: within 90 days from Effective date

TOTAL UNSECURED TAX CLAIM(S) $ 726

**D.**    **Secured Claims:**

5.    The Plan proponent hereby discloses that each class of secured claim (i.e.

Classes 1 through 5) may elect 11 U.S.C § 1111(b)(2) treatment at any time prior to the

conclusion of the hearing on the disclosure statement or within such time as the court may

fix. *See* Fed. R. Bankr. P. 3014.

- 13 -

160569.1  30795.0002

**CLASS ONE:**

**.Secured Claim of First Federal Bank:**

Total amount of allowed claim: $2,116,758.00

Total amount of payments (over time) to satisfy the secured claim: $2,359,241.00

Interest rate (to compensate creditor because claim is paid over time): 5.5%

Impaired

First payment date: Effective Date (assumed to be 4/1/10)

Amount of each installment: For first year, approximately $9,100 monthly (i.e. interest only at 5.5% on principal of $2,000,000 if sufficient cash available. Must maintain minimum cash bank balance of $200,000 for operations, so payment amount may be reduced on occasion.) For second through tenth years, monthly payments to fully amortize loan by end of tenth year at 5.5% on principal of $2,000,000.

Frequency of payments: monthly

Total yearly payments: Y1=$113,000; Y2=$196,000; Y3=$227,000; Y4 through Y10=$260,463 per year

Final payment date: 2019

Lien is modified by the Plan as follows: Interest rate to be 5.5% on principal amount of $2,000,000, with ten year payback period of interest only monthly for first year and fully amortized for remaining term of loan.

Description of Collateral: all assets of the Debtor

Additional comments: The claim is consolidated from two original secured notes (one as a revolving loan of $2,116,758 and the second as a term loan of $470,000) both secured by the same collateral (i.e. all of the debtor's assets).

///

- 14 -

160569.1  30795.0002

**CLASS TWO:**

**Secured Claim of Intech of California:**

Total amount of allowed claim: $72,000 (with $50,000 secured and $22,000 unsecured)

Total amount of payments (over time) to satisfy the secured claim: $50,000 plus contract non-default interest rate towards secured portion of claim, plus Class 8 prorated payment for the $22,000 unsecured part of claim.

Interest rate (to compensate creditor because claim is paid over time): non-default contract rate on secured part, no interest on unsecured part.

Impaired

First payment date: Effective Date (assumed to be 4/1/10)

Amount of each installment: $1,580.00 until $50,000 plus interest paid on $50,000 secured portion; also will receive Class 8 prorated payments.

Frequency of payments: monthly until $50,000 paid with interest; thereafter, payments made annually as prorated part of Class 8.

Total yearly payments: twelve monthly payments of $1,580 until $50,000 paid off with interest; then prorated Class 8 payments.

Final payment date: 2019

Lien is modified by the Plan as follows: Debtor shall continue to make payments at non-default interest rate until $50,000 secured part of loan paid off; then unsecured part of loan shall be satisfied by prorated Class 8 payments.

Description of Collateral:  Haas VF-4 machine

Additional comments: none

- 15 -

## CLASS THREE:

### Secured Claim of Ford Credit:

Total amount of allowed claim: $0

Total amount of payments (over time) to satisfy the secured claim: $0

Interest rate (to compensate creditor because claim is paid over time): N/A

Impaired

First payment date: N/A

Amount of each installment: N/A

Frequency of payments: N/A

Total yearly payments: N/A

Final payment date: N/A

Lien is modified by the Plan as follows: the loan has been paid off

Description of Collateral: 2005 Ford Freestyle

Additional comments: this car was in a pre-petition total-loss accident, and Chuss insurance paid Ford Credit directly for the full amount of the loan. Any allowed deficiency claim will be included as part of Class 8 general unsecured claims.


## CLASS FOUR:

### Secured Claim of Ford Credit:

Total amount of allowed claim: $8,873.73

Total amount of payments (over time) to satisfy the secured claim: $

Interest rate (to compensate creditor because claim is paid over time): non-default contract rate

Not Impaired

- 16 -

First payment date: Effective Date (assumed to be 4/1/10)

Amount of each installment: $452.00

Frequency of payments: monthly

Total yearly payments: twelve payments of $452.00 each year until loan paid off.

Final payment date: when loan paid off

Lien is modified by the Plan as follows: Debtor shall continue to make payments at non-default interest rate until loan paid off.

Description of Collateral:  2007 Ford 500 SEL

Additional comments: any allowed claim amount greater than the secured amount of the loan shall be added to Class 8 unsecured claims, and Ford would then receive prorated Class 8 payments.  In that case, this class would then become Impaired.

**CLASS FIVE:**

**Secured Claim of Volvo Car Finance:**

Total amount of allowed claim: $16,000.00

Total amount of payments (over time) to satisfy the secured claim: $16,000 plus interest at non-default contract rate

Interest rate (to compensate creditor because claim is paid over time): non-default contract rate

Not Impaired

First payment date: Effective Date (assumed to be 4/1/10)

Amount of each installment: $489.63

Frequency of payments: monthly

Total yearly payments: twelve payments per year of $489.63

- 17 -

160569.1  30795.0002

Final payment date: when loan paid off

Lien is modified by the Plan as follows: Debtor shall continue to make payments at non-default interest rate until loan is paid off.

Description of Collateral:  2007 Volvo S40

Additional comments: any allowed claim amount greater than the secured amount of the loan shall be added to Class 8 unsecured claims, and Volvo would then receive prorated Class 8 payments.  In that case, this class would then become Impaired.

**E.**    **Unsecured Claims:**

**CLASS SIX:**

**Priority Wage Claims – Active Employees (Sec. 507(a)(4):**

See Exhibit "A" for list of claimants and amount owed each.

Total amount of allowed claims: $123,284.31

Total amount of payments (over time) to satisfy claims: $123,284.31

Interest rate: none

Impaired

First payment date: Effective Date

Amount of each installment: varies with employee

Frequency of payments: made with regular payroll in 2010

Total yearly payments: paid off in 2010

Final payment date: 2010

Additional comments: Individuals who are employed by the Debtor on the Effective Date shall receive their pre-petition sick pay and accrued vacation pay as they normally would take it in 2010 as part of their normal payroll.

- 18 -

160569.1  30795.0002

**CLASS SEVEN:**

**Priority Wage Claims – Terminated Employees (Sec. 507(a)(4):**

See Exhibit "A" for list of claimants and amount owed each.

Total amount of allowed claims: $112,501.57

Total amount of payments (over time) to satisfy claims: $112,501.57

Interest rate: none

Impaired

First payment date: 90 days after the Effective Date

Amount of each installment:  $28,126 (i.e. one-fourth of the total claim)

Frequency of payments: quarterly

Total yearly payments: $112,501.57

Final payment date: five quarters after the Effective Date

Additional comments:


**CLASS EIGHT:**

**General Unsecured Claims:**

See Exhibit "A" for list of claimants and amount owed each.  This class is subdivided into subclasses in Exhibit "A" for purposes of clarity of understanding, but all claimants in this class are assumed in this Plan to be treated the same.  The subclasses are: Unsecured Portion of Secured Claims, Non-Priority Portion of Wages and Commissions, Unsecured Non-Priority Insider Claims, and Unsecured Vendor Claims.

Total amount of allowed claims:  $4,357,505.50 (includes all subclasses)

Total amount of payments (over time) to satisfy claims: $696,000

160569.1  30795.0002

Interest rate: none (this class would receive zero in a Chapter 7 liquidation)

Impaired

First payment date: 2016

Amount of each installment: $104,000 in 2016; $153,000 in 2017; $196,000 in 2018, and $243,000 in 2019.

Frequency of payments: annual

Total yearly payments: $104,000 in 2016; $153,000 in 2017; $196,000 in 2018, and $243,000 in 2019.

Final payment date: 2019

Additional comments:  The claims objection process is still pending for certain claims, so the allowed amount may change.  The payments assume that a minimum cash balance of $200,000 is maintained by the Debtor at all times for operations; hence, the actual payments may vary from Plan.

Insider Claims

5.    This is the claim of a person as defined in 11 U.S.C.A. § 101(31) (West Supp. 2006).  Essentially, an insider is a person with a close relationship with the debtor, other than a creditor-debtor relationship.

Insider # 1.

Claimant: David and Helena Brown

Total amount of allowed claim: $1,409,028.00

Total amount of payments (over time) to satisfy claims: prorated portion of total Class 8 claims described above.

Interest rate (to compensate creditors because claim is paid over time): none

Impaired

160569.1 30795.0002

First payment date: 2016

Amount of each installment: prorated portion of total Class 8 claims described above.

Frequency of payments: annual

Total yearly payments: prorated portion of total Class 8 claims described above.

Final payment date: 2019

Additional comments:  the Creditors' Committee may file an objection to this claim until December 31, 2009.

TOTAL INSIDER CLAIMS $ 1,409,028.00

D.    **CLASS NINE:**

**Shareholders Interests**

6.    Under the Plan, all stock shall be transferred into a Trust for the Benefit of Unsecured Creditors.  Each unsecured creditor shall hold a prorated share of the voting rights and distribution rights of the Trust.  If and only if all unsecured creditors receive 100% of their allowed claims plus interest, shall the stock shall revert to its current owners.

X.

**SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.  What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  More detailed statements of cash flow projections for the duration of Plan payments are

- 21 -

160569.1  30795.0002

attached as follows: Exhibit "B" provides the "Reorganization Plan Cash Flow and Distribution Summary", and Exhibit "C" provides the detailed Ten Year Forecast Income Statement" for each of the ten years in the term of the Plan.

Here is a summary over the ten years of the Plan:

| Line Item | 10 Year Total (rounded to $000) |
|---|---|
| Cash Receipts | $71,257,000 |
| Less: Operating Expenses | -67,776,000 |
| **Operating Receipts Less Expenses** | **$3,480,000** |
| Annual Chapter 11 Payments: | |
| US Trustee Fees | 260,000 |
| Administrative Claims | 102,000 |
| Priority Tax Claims | 1,000 |
| Class 1: First Federal Bank | 2,359,000 |
| Class 2: Intech of CA | 50,000 |
| Class 3: Ford Credit (Freestyle) | Already paid off |
| Class 4: Ford Credit (500 SEL) | 9,000 |
| Class 5: Volvo Finance | 16,000 |
| Class 6: Priority Wages – active employees | 123,000 |
| Class 7: Priority Wages -- terminated employees | 113,000 |
| Class 8: General Unsecured | 696,000 |
| Class 9: Equity Holders | 0 |
| **Total Plan Payments:** | **$3,530,000** |

Section XV(C) states the assumptions and details surrounding the statement of projected cash flow.

On the Effective Date, the Plan pays Administrative claims to the extent that cash is

160569.1 30795.0002

1  available.  It is assumed that $250,000 of cash will be held on the Effective Date, and that a cash

2  reserve of $200,000 shall always be maintained.  Hence, it is assumed that $50,000 shall be available

3  for distribution on the Effective Date.

**XI.**

**FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED**

6      Attached as are three types of financial documents, including balance sheets, cash flow

7  statements and income and expense statements for the period including the most recent twelve-

8  month calendar year and all months subsequent thereto.  (Please note that a separate Cash Flow

9  Statement is not provided; it is the same as the Income Statement, since the financial statements are

10  calculated on a cash basis.)   Attached are the following exhibits:

11      -   Exhibit "D" -- Balance Sheet as of 1/12/09 (i.e. the Chapter 11 filing date)

12      -   Exhibit "E" -- Balance Sheet as of 10/31/09, including both the current book value and

13          the liquidation value of assets.

14      -   Exhibit "F" -- Cash Based Monthly Income Statement for 2009, which includes actuals

15          for January through October, and projections for November and December.

**XII.**

**ASSETS AND LIABILITIES OF THE ESTATE**

**A.      Assets**

19      The identity and fair market value of the estate's assets are listed in Exhibit "E" so that the

20  reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the

21  overall worth of the bankruptcy estate.   Whether the Plan proposes to sell any of these assets is

22  discussed in section XVI.

**B.      Liabilities**

24      Exhibit "A" shows the allowed claims against the estate, claims whose treatment is explained

25  in detail by section IX.

**C.      Summary**

27      The fair market value of all assets equals $1,369,500. Total liabilities equal $6,996,894.

28

160569.1 30795.0002

## XIII.

## TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown." The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable." The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable." The term can mean that <u>secured claimants</u> retain their liens and receive cash payments whose present value equals the value of their security interest. For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000. The term means that <u>unsecured claimants</u> whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006). "Fair and equitable" means that each <u>holder of an interest</u> must receive the value of such interest or else no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, <u>unless</u> the Plan provides that the class of general unsecured claims shall be paid in full with interest. If a class of interest holders votes against the Plan, the Plan cannot be confirmed where the Debtor will receive or retain any property under the Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest. These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

160569.1 30795.0002

## XIV.

## TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS

## (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for three reasons. First, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000. Second, the trustee would employ professionals (e.g. CPA, attorney, auctioneer), and these Chapter 7 administrative fees would be paid prior to pre-petition unsecured creditors. Third, all company assets are secured by First Federal Bank, and their secured claim is greater than the liquidation value of the assets.

Hence, in a Chapter 7 liquidation, unsecured creditors would receive zero. In this Plan, general unsecured creditors would receive $696,000, which is between 10% and 23% (depending upon whether the insider claim of David and Helena Brown is allowed).

## XV.

## FUTURE DEBTOR

A.  **Management of Debtor**

7.  Names of persons who will manage the Debtor's business affairs: the current

- 25 -

160569.1  30795.0002

management team shall stay in place, including Richard Laski shall serve as CEO and Trustee of the Creditors' Trust, and Robert Rivera shall serve as president and general manager.

8.  Proposed compensation to persons listed above:  maintain current salaries as follows: Richard Laski - $152,000 per year for 8 – 12 hours per week.  Robert Rivera $172,500 per year.

9.  Qualifications: both persons are currently serving in senior management positions for the debtor.

10.  Affiliation of persons to Debtor:  both persons are currently employed by the Debtor

11.  Job description:  CEO / Trustee of Creditors' Trust – overall long term monitoring and strategic planning for company.  President / General Manager – responsible for all day-to-day operations of the company.

**B.   <u>Disbursing Agent</u>**

The CEO of the Debtor is responsible for collecting money intended for distribution to claimants and transmitting it to them.  The disbursing agent's address and telephone number are: CEO, c/o Jackson Corporation, 3447 Union Pacific Avenue, Los Angeles, CA 90023.  Phone number is (323) 269-8111.

12.  Proposed compensation to person listed above: included as part of compensation as CEO.

13.  Qualifications:  CEO of Debtor.

14.  Affiliation of person to Debtor: CEO of Debtor.

15.  Job description: supervise Plan distributions.

160569.1  30795.0002

1

### C.  **Future Financial Outlook**

2  The Proponent believes that the Debtor's economic health will continue to improve from its

3  pre-bankruptcy state for the following reasons.  Post petition operations are proceeding as scheduled

4  and projected.  Prior to the filing, the Company was generating gross sales revenue of around $12

5  million per year ($1 million per month).  It achieved these financial results with a work force of 95

6  people during the early part of 2008.  During the fourth quarter of 2008, management decided on a

7  significant reduction in its workforce.  The Company now operates with 38 employees.  With the

8  reduction in work force and decline in business, revenue is now down to $500,000 per month (i.e.,

9  $125,000 per week).  The Company can sustain itself at this rate without further sales and marketing

10  expenses.  The demand for product is such that new business can be initiated by order takers.

11  Section X provides a summary of the projected cash flow of the Debtor for the duration of

12  the Plan.  The following assumptions underlie the projections.  For Exhibit "C" (Ten Year Forecast

13  Income Statement) annual increases are assumed as follows:  4% annual sales growth, 4% annual

14  increase in payroll and benefits, and 3.4% annual increase in facilities and administration.  As

15  previously stated, Plan payments will come from the continued operation of the Debtor's business.  If

16  the business generates insufficient funds to provide all of the Plan payments, then the Proponent will

17  make up the shortfall under the following conditions and subject to the following terms: cash flow

18  will first be used to pay interest (in whole or in part) to First Federal Bank.  Then, other distributions

19  shall be made.  Any shortfall will be made up from future operations of the Debtor.  The Proponent's

20  financial solvency, which is relevant to its ability to honor its commitment to make up any shortfall,

21  is demonstrated by the following facts.  The Debtor has stabilized operations and should be able to

22  achieve at least break even cash flow for the future.  As the economy improves, performance should

23  improve.

- 27 -

**XVI.**

**SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES;**

**OTHER PROVISIONS**

The Plan does not assume the transfer of property. A new lease on the Debtor's facilities is currently being negotiated, and it shall be subject to court approval.

The Court must make certain findings of fact before approving the aforementioned provisions as part of the Plan. The Proponent will request that the Court make the appropriate findings at the confirmation hearing, based upon evidence submitted in support of the confirmation motion.

**XVII.**

**BANKRUPTCY PROCEEDINGS**

The court has approved the employment of all professionals. There are no pending adversary matters. Claims objections are being heard on November 10, 2009. The Creditors' Committee has received an extension until December 31, 2009 to object to the insider claims of David and Helena Brown. The use of cash collateral has been agreed upon by stipulation between the debtor and First Federal Bank. Here is a summary of orders entered by date:

1. <u>1/15/09</u>: Order setting hearing on emergency motion for authority to pay pre-petition payroll.

2. <u>1/16/09</u>: Order granting emergency motion authorizing debtor and debtor in possession to pay pre-petition payroll.

3. <u>1/29/09</u>: Order 1) requiring debtor-in-possession to file report on status of reorganization case; 2) setting hearing on status of reorganization case; and 3) establishing procedure for requesting approval of disclosure statement and confirmation of plan.

4. <u>2/3/09</u>: Order granting motion to extend time to file schedules of assets and liabilities and statement of financial affairs.

- 28 -

160569.1  30795.0002

5.   2/9/09: Order approving employment Greenberg & Bass, LLP as counsel for debtor and debtor in possession.

6.   3/13/09: Order approving interim use of cash collateral.

7.   3/27/09: Order approving employment of Clarkson, Gore & Marsella as counsel to Creditors' Committee.

8.   4/24/09: Order granting relief from stay to Ford Motor Credit re 2007 Ford 500 SEL.

9.   5/1/09: Order approving stipulation re further interim use of cash collateral through May 9, 2009.

10.  6/5/09: Order extending plan exclusivity period under 11 U.S.C. section 1121.

11.  6/5/09: Order extending the time within which to assume or reject a non-residential real property lease.

12.  7/22/09: Order granting/approving stipulation re further interim use of cash collateral for the period May 30, 2009 through July 19, 2009.

13.  8/14/09: Order granting application for compensation.

14.  9/14/09: Order granting/approving stipulation re further interim use of cash collateral for the period July 20, 2009, through September 13, 2009.

15.  10/14/09: Order on motion for order authorizing assumption of unexpired lease of non-residential real property.

16.  11/4/09: Order approving stipulation re further interim use of cash collateral for the period September 14, 2009 through November 8, 2009.

17.  11/10/09: Order approving stipulation between debtor and creditors committee on extension of deadline to object to inside claims.

## XVIII.

## TAX CONSEQUENCES OF PLAN

1. Tax Consequences to Creditors: The income tax consequences to creditors of the implementation of the Plan will depend, among other things, on the consideration to be received by the creditor, whether the creditor reports income using the accrual or cash method, and whether the

- 29 -

160569.1 30795.0002

creditor has taken a "bad debt" deduction or worthless security deduction with respect to its claim. No opinion of counsel or ruling from the IRS will be sought or obtained, and it is not likely that an opinion or ruling could be obtained on all issues if one were sought. The Debtor will withhold all amounts required by law to be withheld from payments to holders of claims. In addition, such holders may be required to provide certain tax information to the Debtor as a condition of receiving distributions under the Plan.

2. <u>Tax Consequences to the Estate</u>:  The corporate tax return for the year ended December 31, 2008 shows that there is a federal Net Operating Loss (NOL) carryforward of $3,657,068 and a California Net Operating Loss (NOL) carryforward of $3,983,467.   It is assumed for this Plan that these Net Operating Losses would offset any potential gain from the sale of assets or from any net income generated during the ten years of the Plan.  Furthermore, under the insolvency exception under Section 108(c) of the Internal Revenue Code, debt forgiveness would not be treated as income. Hence, there would be no tax consequence under the Plan.

### XIX.

### <u>EFFECT OF CONFIRMATION OF PLAN</u>

A.      **General comments**

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

160569.1  30795.0002

**B.** **Discharge of liability for payment of debts; status of liens; equity security**

**holders**

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3) (West 2004), the debtor may obtain a discharge only upon specific order of the Court.  The debtor will seek such a discharge.

The confirmation of the Plan does not discharge the Debtor from any debt of a kind specified in 11 U.S.C.A. § 523(a)(2)(A)-(B) (West 2004 & Supp. 2006) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty." *See* 11 U.S.C.A. § 1141(d)(5)-(6) (West Supp. 2006).

**C.** **Modification of the Plan**

The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp. 2006).

**D.** **Post-Confirmation Causes of Action**

To the best knowledge of the Proponent, the estate has the following causes of action: **none.** Richard J. Laski, the acting CEO (or his successor as CEO) is designated as representative of the estate under 11 U.S.C.A. § 1123(b)(3) (West 2004) and shall have the right to assert any or all of the above causes of action post-confirmation in accordance with applicable law.

**E.** **Final Decree**

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

160569.1 30795.0002

**XX.**

**DECLARATIONS IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

**DECLARATION OF RICHARD LASKI**

I, Richard J. Laski, acting CEO of Jackson Corporation, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1.    The debtor's staff (i.e. acting CEO Richard J. Laski, and controller Amy Thibodeaux), and Douglas M. Neistat and staff at Greenberg & Bass, LLC (debtor's counsel) are the individuals who prepared this document.

2.    The sources of all financial data are: Stonefield Josephson, Inc. (debtor's pre-petition CPA), and from the debtor.

3.    All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.    No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.    The name of the persons who prepared the cash flow projections and the other financial documents are: Richard J. Laski (Jackson's acting CEO), Amy Thibodeaux (Jackson's controller), and Bill Keuhn (Prolman Associates, financial and restructuring advisors to the Official Committee of Unsecured Creditors), and such persons were acting within the capacity of employees and advisors to the Debtor and to the Official Committee of Unsecured Creditors.

6.    The accounting method used to prepare the cash flow projections and the other financial documents is (are) cash basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of November, 2009 at Los Angeles, California.

Richard J. Laski, Acting CEO
Jackson Corporation

## DECLARATION OF DOUGLAS M. NEISTAT

I, DOUGLAS M. NEISTAT, declare:

1.     I am an attorney at law licensed to practice before all of the Courts of the State of California and before the United States Bankruptcy Court, Central District of California. I am Of Counsel with the law firm of Greenberg & Bass, Attorneys for Jackson Corporation, the Debtor and Debtor in Possession herein. I make this declaration of my own personal knowledge and if called to testify, I could and would competently testify thereto.

2.     I am one of the individuals at Greenberg & Bass, LLP who prepared this document.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of November, 2009 at Encino, California.

DOUGLAS M. NEISTAT

- 33 -

160569.1 30795.0002

## BALLOT FOR ACCEPTING OR REJECTING PLAN

Jackson Corporation, the Debtor, filed a Plan of Reorganization on November 12, 2009. By this ballot you will decide whether to accept or reject this Plan.

The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan.

If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C.A. § 1129(b) (West 2004 & Supp. 2006).

Check the appropriate line below, which describes your interest:

_____ The undersigned, a creditor with an allowed claim in the amount of $_____:

_____ The undersigned, a holder of a bond in the amount of $_____, with a stated maturity date of _____, registered in the name of _____, and bearing serial number(s)_____:

_____ The undersigned, the holder of _____ shares of _____ (explain type of stock) stock, with a certificate(s) No. _____:

[ ] Accepts the Plan

[ ] Rejects the Plan

Print or type name: _____

State which class you are a member of: _____

Signed: _____

If appropriate, by: _____ as _____

Address:

Return this ballot on or before _____ to: Douglas M. Neistat, Greenberg & Bass, LLC, 16000 Ventura Blvd., Suite 1000, Encino, CA 91436